PEOPLE v SANGSTER

Docket No. 55036. Submitted May 4, 1982, at Lansing.—Decided
February 9, 1983.

Freddie L. Sangster was convicted of carrying a pistol in an
automobile, Saginaw Circuit Court, Joseph R. McDonald, J. The
Saginaw Police Department had received information that
Sangster was carrying a concealed weapon. Subsequently, a
Saginaw police officer, carrying a gun, approached Sangster
who was sitting in his automobile and ordered that Sangster
get out of the car. Sangster fled in his automobile with the
officer in pursuit. The officer allegedly saw Sangster throw a
gun out of the car window before he was apprehended. At the
preliminary examination, the magistrate ruled that the gun
that Sangster allegedly threw from the car had been obtained
as a result of an illegal search and seizure and dismissed the
case. The circuit court reversed the decision and remanded the
case to the district court for completion of the preliminary
examination. Sangster was subsequently bound over for trial
and convicted. The defendant appeals, alleging that the trial
court erred in: (1) failing to conduct an evidentiary hearing
relying solely upon the transcript of the preliminary examina-
tion before denying his motion to suppress the weapon seized
by the police; (2) initially holding that evidence of the defen-
dant's prior convictions would not be admissible but that the
prosecution could raise the issue again during the trial and
subsequently allowing admission of evidence of the defendant's
prior convictions after the defendant testified on his own be-
half; and (3) refusing to instruct the jury on the lesser offense
of attempted carrying of a concealed weapon. *Held:*

1. The defendant's discarding of the gun and the subsequent
seizure of the gun by the police were not, as a matter of law,
the results of an illegal intrusion, although the issue should be

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arrest §§ 80, 81.
[2, 3] 81 Am Jur 2d, Witnesses § 569.
[4] 79 Am Jur 2d, Weapons and Firearms §§ 9, 10, 12.
Offense of carrying concealed weapon as affected by manner of
carrying or place of concealment. 43 ALR2d 492.

analyzed by using the "fruit of the poisonous tree" doctrine. The officer's drawing of his gun upon approaching Sangster's automobile did not transform the stop into an arrest. It is the actual intrusion on a defendant's privacy that must be examined in an alleged violation of the Fourth Amendment, not the intent or plan of the police officer.

2. The trial court erred in deciding to permit impeachment of the defendant by evidence of his prior convictions after the defendant had testified.

3. The trial court did not err in refusing to instruct the jury on the lesser offense of attempted carrying of a concealed weapon.

Reversed and remanded.

R. M. MAHER, P.J., concurred in part and dissented in part. He would direct the trial court to conduct an evidentiary hearing on the motion to suppress the weapon. He was unable to determine from the record whether the trial court erred in denying the motion to suppress. The lower court must determine whether the officer unlawfully attempted to detain or arrest the defendant. If so, the weapon was obtained as a result of unlawful police action and should be suppressed as "fruit of the poisonous tree". He agreed that the trial court erred in admitting evidence of the defendant's prior convictions for impeachment purposes after the defendant had testified. He believes that the trial court did not err in refusing to instruct the jury on the lesser offense of attempted carrying of a concealed weapon.

OPINION OF THE COURT

1. ARREST — STOP — POLICE PROTECTIVE MEASURES.

Protective measures undertaken by a police officer, including the officer's drawing of a gun on approaching a car whose driver may be armed, do not transform a stop into an arrest, for purposes of the Fourth Amendment; the officer may increase the risk of being shot by leaving the gun in its holster (US Const, Am IV).

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY R. M. MAHER, P.J.

2. EVIDENCE — PRIOR CONVICTIONS — IMPEACHMENT.

Generally, a trial court should not reserve its ruling on a motion to suppress evidence of a defendant's prior convictions until the defendant has completed his testimony but should rule on the motion immediately.

3. Evidence — Prior Convictions — Impeachment.

A trial court in determining whether evidence of a defendant's prior convictions should be admitted for impeachment purposes should limit impeachment to evidence of crimes that are not substantially similar to the crime charged and crimes that are significantly probative of the defendant's credibility.

4. Weapons — Concealed Weapons — Lesser Included Offenses.

The crime of attempted carrying of a concealed weapon is not a necessarily lesser included offense of the crime of carrying a pistol in an automobile (MCL 750.227; MSA 28.424).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Kay F. Pearson,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Derrick A. Carter),* for defendant on appeal.

Before: R. M. Maher, P.J., and Bronson and R. J. Snow,* JJ.

Bronson, J. I agree with the dissent that defendant's conviction must be reversed due to the untimely decision to allow evidence of defendant's prior convictions to be used for impeachment purposes.

I write separately to state my disagreement with the dissent's treatment of the search and seizure issue. A drawn gun does not transform a stop into an arrest. In *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), Chief Justice Warren stated:

"We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon

* Circuit judge, sitting on the Court of Appeals by assignment.

that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Terry, supra,* p 23.

*Terry* allowed significant encroachments on privacy rights in order to protect police officers in the course of their duties. To achieve this measure of protection, *Terry* permitted officers to "stop and frisk" a subject, under circumstances in which probable cause did not exist, without offending the Fourth Amendment. The drawing of a gun does little to add to the intrusiveness of a frisk but may add greatly to the protection afforded the officer during the stop. Protective measures, such as drawing a gun on approaching a car whose driver may be armed, do not transform a stop into an arrest; the officer may increase the risk of being shot, however, by leaving the gun in its holster. *United States v Jackson,* 652 F2d 244 (CA 2, 1981).

In addition, I do not think it appropriate, in Fourth Amendment analysis, to attempt to devine what a police officer would have done had a suspect not fled. It is not the planned intrusion on privacy which must be examined, it is the actual one. See *Terry, supra,* p 21, fn 16.

I must also disagree with the statement that "the weapon seized by the police was clearly obtained as a result" of the allegedly illegal intrusion although I do agree that the problem must be analyzed by using the "fruit of the poisonous tree" doctrine. The trial court must ask whether the act of throwing the gun from the car was a result of the allegedly illegal action. In doing so, it cannot overlook the possibility that the discarding of the gun was the result of an unreasonable response to the situation by the defendant. This Court cannot conclude, as a matter of law, that the discarding of

the gun was the fruit of the allegedly illegal stop. All questions concerning the suppresssion of evidence remain open on our remand to the trial court.

Reversed and remanded.

R. J. SNOW, J., concurred.

R. M. MAHER, P.J. *(concurring in part and dissenting in part)*. Defendant, Freddie Lee Sangster, was convicted by a jury of carrying a pistol in an automobile, MCL 750.227; MSA 28.424. Sentenced to three to five years in prison, he appeals as of right.

In April, 1979, the Saginaw Police Department received a tip that Mr. Sangster was carrying a concealed weapon. Two weeks later, the police received another tip to the same effect. Two days after the second tip, Officer Russell Howell spotted Sangster leaving a bar. Howell thereupon approached Sangster, who was sitting in a car, in an effort to detain him in order to determine whether or not he was carrying a weapon. Howell ordered Sangster out of the car at gunpoint. For some reason Sangster did not wish to be thus detained, and he fled the scene in his car, with Officer Howell in pursuit. In the course of the chase, Howell allegedly observed Sangster throw a gun through his car's open window. Shortly thereafter, Sangster was apprehended.

At the preliminary hearing, the magistrate ruled that the gun Sangster had allegedly thrown from his car had been obtained as a result of an illegal search and seizure. Accordingly, the magistrate dismissed the case. The circuit court reversed and remanded the case to the dsitrict court for completion of the preliminary hearing. Sangster was bound over for trial.

Before the trial, defense counsel filed a motion to suppress the weapon seized by the police and urged the circuit court to rely solely upon the preliminary hearing transcript in deciding the motion. Accordingly, the court failed to conduct an evidentiary hearing before denying the motion.

Defense counsel also filed a motion *in limine* to exclude evidence of Sangster's prior convictions for impeachment purposes. Sangster had four prior convictions: a 1975 conviction for carrying a concealed weapon; 1972 and 1978 convictons for felonious assault; and a 1975 conviction for possession of cocaine.[1] The circuit court ruled that evidence of the prior convictions would not be admissible but stated that the prosecution could raise the issue again during trial if the circumstances so warranted.

In reliance on this ruling, Sangster testified in his own defense. He testified that he threw a gin bottle, not a gun, out of his car. At the completion of the direct examination, the prosecutor brought a motion to impeach Sangster by evidence of prior convictions, arguing that Sangster had put "in the minds of the jury that he sits there with a halo over his head". The trial court granted the motion. We reverse and remand for a new trial.

As a general rule, a trial court may not reserve its ruling on a motion to suppress evidence of prior convictions until the defendant has completed his testimony but must rule on the motion immediately.[2] A defendant's decision whether or not to take the stand typically hinges upon the trial

[1] The prosecution did not seek to introduce evidence of the 1978 felonious assault conviction at trial.

[2] To the extent that *People v Lytal*, 96 Mich App 140; 292 NW2d 498 (1980), *lv gtd* 409 Mich 923 (1980), and *People v Taylor*, 98 Mich App 685; 296 NW2d 631 (1980), hold to the contrary, we believe that they were incorrectly decided.

court's disposition of a motion to suppress evidence of prior offenses. How, then, can a defendant and his attorney plan effective trial strategy when they do not know whether the prosecution will be permitted to tell the jury that the defendant is a convicted felon?

If the trial court finds itself unable to balance the probative value of a prior conviction against its prejudicial effect until the court has been informed of the nature of the defendant's testimony, then, upon request, defense counsel shall apprise the court of the general substance of what the defendant intends to say if he takes the stand. The court shall then issue its ruling. If the trial court grants the motion to suppress evidence of prior convictions, then no impeachment by evidence of prior convictions shall be permitted unless the defendant's testimony substantially diverges from the "preview" version and unless the court determines that, in light of the substantial divergence, the probative value of each prior offense now exceeds its prejudicial effect.

In the instant case, the record shows that Sangster's testimony came as no surprise to either the prosecution or the trial court. Sangster's version of the facts was very similar to the prosecution's version (except that he testified that he threw a bottle of gin from his car, rather than a gun, as Officer Howell contended). After Sangster finished testifying, however, the court decided to reverse its earlier decision to suppress evidence of prior convictions. Nothing in the record supports the trial court's sudden change of heart. Sangster did not testify that he had a clean record or that he had never possessed a gun. He simply gave his own version of the facts. We hold that the trial court abused its discretion in deciding to permit im-

peachment by evidence of prior convictions after Sangster had already testified.

Even if the trial court, in the first instance, had decided to permit impeachment by evidence of prior convictions (rather than waiting until after Sangster had already testified), we are not necessarily convinced that such a decision would have reflected a proper exercise of discretion. Sangster's conviction of simple possession of a controlled substance was, if at all, only marginally probative of his credibility. Moreover, introduction into evidence of Sangster's conviction of carrying a concealed weapon—a similar crime—was very prejudicial to his case. The trial court made no attempt to distinguish between the three prior offenses introduced by the prosecution. Rather, the court simply ruled that the probative value of the three convictions exceeded their prejudicial effect. In such situations we urge trial courts to exercise their discretion to limit impeachment to evidence of (1) crimes that are not substantially similar to the crime charged, and (2) crimes that are significantly probative of the defendant's credibility.

I shall now address two other issues which will arise again in the event Sangster is retried.

In *People v Talley,* 410 Mich 378; 301 NW2d 809 (1981), the Supreme Court indicated its disapproval of the practice of reliance on preliminary examination transcripts in ruling on motions to suppress evidence. I find myself unable to determine on the basis of the present record whether the trial court erred in denying Sangster's motion to suppress. Accordingly, I would direct the trial court, on remand, to conduct an evidentiary hearing before ruling on the motion to suppress.

I would like to make the following observations in order to provide the trial court with some

measure of guidance in ruling on the motion to suppress. (1) I harbor considerable doubt whether a police officer who approaches a suspect at gunpoint and with the intent to search the suspect for weapons can be fairly said to be making a *Terry*[3] stop rather than an arrest. On remand, the trial court should determine whether Officer Howell was actually trying to make an arrest, and not just a *Terry* stop. (2) If the trial court determines that Howell was attempting to make a *Terry* stop, the court should then determine whether Howell reasonably believed that Sangster was armed and dangerous. (3) More fundamentally, I take issue with the trial court's assertion that the Fourth Amendment to the United States Constitution was inapplicable to the seizure of the weapon introduced at trial. The court was apparently under the impression that, since Sangster had allegedly thrown the weapon from his vehicle, he had not been "searched" and that therefore his right to be free from unreasonable searches and seizures had not been violated.[4] This analysis misses the point. It is irrelevant that the gun seized by the police was not taken from Sangster's person. This,

[3] *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

[4] The court issued its ruling in the following manner:

*"The Court:* So it's clear, if that is the case and the court remembers very well the fact situation of that case, there was no search of the defendant. As to come under the constitutional right to be free from unreasonable searches and seizures.

"Therefore, under the facts of that case, the motion to suppress which is a harsh remedy under our law if there is an illegal search; that doesn't apply. This was not a case where the weapon was taken from the person of the defendant or from his vehicle but the transcript of that particular hearing shows that the defendant took off in the car when approached by a police officer. In the ensuing chase, the defendant threw the gun out in the presence of the police officer who so testified.

"So the court on that grounds would not suppress the evidence in this case, so the motion to suppress is denied and this case will be tomorrow morning."

rather, is the dispositive inquiry: Did Officer Howell unlawfully attempt to detain or arrest Sangster? If so, the weapon seized by the police was clearly obtained as a result of this unlawful action and must be suppressed as fruit of the poisonous tree.

Finally, I address Sangster's contention that the trial court erred by refusing to instruct the jury on the lesser offense of attempted carrying of a concealed weapon. Attempted carrying of a concealed weapon is not a necessarily lesser included offense of carrying a pistol in an automobile. *Cf. People v Adams,* 416 Mich 53; 330 NW2d 634 (1982). Although attempted carrying of a concealed weapon may be a cognate offense of carrying a pistol in an automobile, I am convinced that the evidence produced at trial did not support an instruction on attempted carrying of a concealed weapon. I find, therefore, that the trial court did not err in refusing to give such an instruction. See *People v Adams, supra.*