PEOPLE v JAMES GREEN

Docket No. 241615. Submitted December 9, 2003, at Detroit. Decided January 22, 2004, at 9:00 A.M. Leave to appeal sought.

James N. Green was convicted by a jury in the Oakland Circuit Court, Alice L. Gilbert, J., of carrying a concealed weapon, resisting or obstructing a police officer, driving while under the influence of intoxicating liquor, operating a vehicle with a suspended or revoked license, and possession of a firearm while under the influence of intoxicants. Responding to a call from Ford Motor Company security personnel, police officers found the defendant's car damaged and parked across several parking spots and found the defendant violent and assaultive. The police restrained him with handcuffs, and he responded by obstructing the officers in their investigation of the Ford complaint. A later impoundment and inventory search of the car revealed a pistol in a briefcase in the trunk. The defendant appealed, claiming unlawful arrest, no assistance of counsel at arraignment, no probable cause for bindover, violation of his statutory right to an independent chemical test, inadmissibility of blood test evidence, improper vehicle impoundment, improper search of the vehicle, and inadequate jury instructions.

The Court of Appeals *held*:

1. The defendant was restrained during the prearrest investigation for the safety of the police officers. The officers' protective measures did not transform the investigation into an arrest. Because the defendant committed the misdemeanor of resisting or obstructing the officers, the officers had probable cause and authority to arrest the defendant under MCL 764.15(1)(a).

2. The absence of an attorney for the defendant at arraignment is no flaw in the proceedings because the arraignment was not a critical stage in the criminal prosecution. "Critical stage" means prosecutorial activity that has some effect on the determination of guilt that could properly be avoided or mitigated by the presence of counsel. At the arraignment the defendant was advised of the charges against him and advised of his right to counsel. He was not asked any questions, except whether he understood the charges, and he was not requested to enter a plea. The arraignment was not

a critical stage at which the defendant had a Sixth Amendment right to counsel. The defendant failed to allege any reason to believe that any different outcome of the arraignment would have resulted if he had been represented by counsel.

3. The defendant was charged with obstructing the officers in their lawful duty of investigating a complaint. The lawfulness of the arrest is not an element of obstructing or resisting a police officer, MCL 750.479.

4. The defendant's claim that a pistol being conveyed in a briefcase in the trunk of his car was not being "carried" for the purpose of MCL 750.227(2) is invalid because he was leaning into the open trunk in proximity to the weapon, and ammunition for it, when first approached by the police and because the vehicle was owned by the defendant.

5. The police did not violate the advice of chemical rights statute, MCL 257.625a(6)(b), because the right to an independent chemical test is conditioned upon the taking of a chemical test administered at the request of police officers, and the test in this case was ordered by an emergency room doctor and undertaken as part of the defendant's hospital care. MCL 257.625a(6)(e) authorizes the admission of a chemical test taken under these conditions when there has been an accident. When the officers arrived, the defendant's automobile was missing a tire, had a damaged rim, was smoking, and was parked across several parking spaces, all indicating an accident had occurred.. Also, the defendant was incoherent, violent, and assaultive, indicating that he may have been injured in the accident.

6. The trial court properly denied the defendant's motion to suppress evidence found during the impoundment and inventory search of the defendant's car and the containers within it. The impoundment and the inventory were performed pursuant to standard police policy.

7. The defendant's claim that the court erred by failing to provide the jury with a number of instructions is incorrect because the instructions that were given fairly presented the issues to be tried and sufficiently protected the defendant's rights.

Affirmed.

1. ARREST — PREARREST INVESTIGATION — RESTRAINT OF SUSPECT.

Where police officers restrain a violent and assaultive suspect during an investigation before arrest, the use by the officers of protective measures, including handcuffs, does not transform the investigation into an arrest.

2. Pretrial Procedure — Arraignment — Right to Counsel.

> At an arraignment at which the defendant is advised of his right to an
> attorney and is advised of the charges against him and no plea is
> requested, the absence of counsel for the defendant is no error
> because the arraignment is not a critical stage of the prosecution
> inasmuch as there is no prosecutorial activity that has some effect
> on the determination of guilt that could properly be avoided or mit-
> igated by the presence of counsel (US Const, Am VI).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Marilyn J. Day*, Assistant Prosecuting Attorney, for the people.

*Douglas A. McKinney* for the defendant on appeal.

Before: SCHUETTE, P.J., and MURPHY and BANDSTRA, JJ.

BANDSTRA, J. Defendant was convicted of carrying a concealed weapon (CCW), MCL 750.227; resisting or obstructing a police officer, MCL 750.479; driving while under the influence of intoxicating liquor (OUIL), MCL 257.625(1)(a); operating a vehicle with a suspended or revoked license (DWLS), MCL 257.904; and possession of a firearm while under the influence of intoxicants, MCL 750.237. He received concurrent jail sentences of 153 days for the CCW conviction, 122 days for the resisting or obstructing conviction, sixty days for the OUIL conviction, thirty days for the DWLS conviction, and ninety days for the possession of a firearm conviction. He appeals as of right. We affirm.

## BASIC FACTS

Defendant was arrested after he drove his car, which appeared to be significantly damaged, in an erratic fashion across the grass of Ford Motor Com-

pany's Wixom plant, eventually stopping parked across several visitor parking spaces. After noticing the smell of alcohol on defendant's breath, Ford security personnel called the Wixom police, who arrived in uniform and in fully marked police cars to investigate. As the police officers approached defendant, he appeared to be preparing for a fight, then became belligerent and approached a female officer with clenched fists. After momentarily following instructions to place his hands on the trunk of the vehicle, defendant pushed away then turned toward the officers. As a result, defendant was handcuffed. Defendant then began to fight, scream obscenities and threats, and became totally out of control. The fight lasted several minutes, during which additional officers were called to assist. Defendant was eventually restrained, but continued to thrash violently and make threats for several hours thereafter.

Wixom police officers McKaig and Watt searched defendant's car after he was restrained. In an unlocked briefcase in the trunk, they found a loaded nine-millimeter handgun, several dozen additional rounds of ammunition, and a number of documents. An open bottle of vodka was found in the interior of the car. Blood and urine tests administered at the hospital to which defendant was taken for medical care indicated that defendant's blood alcohol level was 0.266 grams per deciliter. Further facts necessary for a resolution of the issues raised on appeal are set forth below.

### UNLAWFUL ARREST—PROBABLE CAUSE

Defendant first argues that he was subjected to an unlawful arrest because there was no probable cause

to believe that he had committed any crime. Although defendant moved before trial to suppress evidence and quash or otherwise dismiss the charges, the issue of the legality of defendant's arrest was not raised until the middle of trial, at which point the trial court indicated that a record on the issue could be made at a later time. The record does not reveal that the issue was revisited and, accordingly, it is not preserved. See *People v Connor*, 209 Mich App 419, 422; 531 NW2d 734 (1995). Unpreserved issues are reviewed for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

The federal and state constitutions guarantee the right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. "Michigan's constitutional prohibition against unreasonable searches and seizures 'is to be construed to provide the same protection as that secured by the Fourth Amendment [of the federal constitution], absent[] "compelling reason" to impose a different interpretation.'" *People v Custer*, 465 Mich 319, 327 n 2; 630 NW2d 870 (2001) (opinion by MARKMAN, J.), quoting *People v Collins*, 438 Mich 8, 25; 475 NW2d 684 (1991).

> Fourth Amendment restrictions apply to seizures of persons that are short of traditional arrests, including brief investigative detentions. There is a limited exception to the probable cause requirement for seizure of a person: Where an officer has a reasonable, articulable suspicion that a person has committed or is about to commit a crime, he may briefly stop that person for the purpose of investigation. The articulable reasons for suspecting criminal activities must derive from the police officer's assessment of the totality of the circumstances. [*People v Estabrooks*, 175

Mich App 532, 535; 438 NW2d 327 (1989) (citations omitted).]

Where "an officer approaches a person and seeks voluntary cooperation through noncoercive questioning, there is no restraint on that person's liberty and the person is not seized." *People v Shankle*, 227 Mich App 690, 693; 577 NW2d 471 (1998).

Defendant's argument is premised on the faulty claim that he was under arrest as soon as the officers approached him and tried to handcuff him. In this case, the officers' initial contact with defendant was for the purpose of attempting to investigate the complaint made by Ford security. The contact was proper because the police were acting upon a complaint of possible criminal conduct and were trying to determine whether a crime was committed or whether defendant was in need of assistance. *Custer, supra* at 326-327. In addition to the initial contact being within the proper authority of the police, the police conduct in trying to secure defendant during the investigation was also proper and was not an unreasonable seizure under the Fourth Amendment. A defendant's restraint is not necessarily an arrest. In *People v Zuccarini*, 172 Mich App 11, 14; 431 NW2d 446 (1988), the defendant was handcuffed during the execution of a search warrant. The officer who handcuffed him indicated that the restraint was mainly for the purpose of safety. This Court determined that the handcuffing was a reasonable, limited intrusion on the defendant's liberty under circumstances where violence could arise and the risk of harm to the police and others needed to be minimized. *Id.* In *People v Sangster*, 123 Mich App 101, 104; 333 NW2d 180 (1983), this Court agreed that protective measures, such as an officer

drawing his weapon, do not transform a stop into an arrest. In other cases, although not raised as an issue, our courts have noted, without comment, the physical restraint of suspects during investigation. See, e.g., *People v Washington*, 468 Mich 667, 669; 664 NW2d 203 (2003) (the Court indicated that the defendant was handcuffed pending further investigation after a scuffle).

The police conduct in trying to restrain defendant during the investigation was a reasonable intrusion on defendant's liberty. The safety of the officers was at risk during their lawful attempt to investigate the situation. Defendant appeared intoxicated and had led the officers to believe that he planned to fight them. He was aggressive and hostile. In addition, the officers were unaware of whether defendant possessed a weapon. They were not required to take unnecessary risks when dealing with defendant.

After the officers validly attempted to restrain defendant for safety reasons, he committed a misdemeanor in their presence, specifically, resisting or obstructing the officers. MCL 750.479. The police then had probable cause to arrest defendant. MCL 764.15(1)(a). It is unnecessary to determine whether the police had authority to arrest defendant under any other statutory provision.

### ASSISTANCE OF COUNSEL AT ARRAIGNMENT

Defendant next argues that he was deprived of counsel at his arraignment on the warrant. See MCR 6.104. This issue was not raised before, or considered by, the trial court and is, therefore, not preserved. *Connor, supra.* Unpreserved issues, constitutional and nonconstitutional, are generally reviewed for

plain error affecting substantial rights. *Carines, supra.*

Before defendant was arraigned, the district court, in accordance with MCR 6.104(D), questioned the officer in charge about the factual basis for the complaint against defendant and determined that there was probable cause to issue a warrant. After the district court determined that there was probable cause for a warrant, defendant was arraigned in accordance with MCR 6.104(E), which provides, in pertinent part, that the court must, if the accused is not represented by a lawyer, advise the accused of the right to have a lawyer present during any questioning consented to, and, if the accused does not have the money to hire a lawyer, the right to court-appointed counsel. MCR 6.104(E)(2)(c), (d). Defendant was not represented by, nor did he request, an attorney at the arraignment. However, the trial court indicated that an attorney would be appointed and, if defendant later chose to hire his own counsel, he would be permitted to do so.

The Sixth Amendment right to counsel provides that a criminal defendant shall enjoy the right to the assistance of counsel at "critical stages" of the proceedings. See *People v Anderson (After Remand)*, 446 Mich 392, 402; 521 NW2d 538 (1994). Critical stages of the proceedings are stages "where counsel's absence may harm the defendant's right to a fair trial." *People v Burhans*, 166 Mich App 758, 764; 421 NW2d 285 (1988), citing *United States v Wade*, 388 US 218, 228; 87 S Ct 1926; 18 L Ed 2d 1149 (1967). In other words, the right to counsel applies to preliminary proceedings where rights may be sacrificed or defenses lost. *White v Maryland*, 373 US 59, 60; 83 S Ct 1050; 10 L Ed 2d 193 (1963).

Nothing in the record indicates that the arraignment was a critical stage of the proceedings in this case during which the absence of counsel during the arraignment denied defendant a fair trial. Defendant did not waive any defenses and none of his rights were compromised. Aside from whether he understood the charges against him, defendant was not asked any questions or requested to enter a plea. Defendant's Sixth Amendment right to counsel was not violated. See *People v Horton*, 98 Mich App 62, 72; 296 NW2d 184 (1980) ("the arraignment on the warrant [is] not a critical stage in the criminal prosecution and therefore the presence of counsel is not required"); see also *People v Killebrew*, 16 Mich App 624, 627; 168 NW2d 423 (1969) (" 'Critical stage' is understood to mean prosecutorial activity which has some effect on the determination of guilt or innocence which could properly be avoided, or mitigated, by the presence of counsel."). Defendant's argument that "no warrants" would have issued if he had counsel is meritless. At the arraignment the district court received the complaint from the officer and determined the existence of probable cause to charge defendant; defendant offers no reason why any different outcome would have resulted if he had had representation.

### PROBABLE CAUSE FOR BINDOVER

Defendant next argues that the district court abused its discretion in finding probable cause at the preliminary examination to bind over defendant for trial in the circuit court. The questions whether the charges of resisting or obstructing and of CCW should have been quashed were raised before and decided by

the trial court, which heard and denied defendant's motion to quash. Accordingly, these issues are preserved.[1] *Connor, supra.* "The circuit court reviews the entire record of the preliminary examination to determine whether the district court's bindover decision constituted an abuse of discretion." *People v McKinley,* 255 Mich App 20, 25; 661 NW2d 599 (2003). "This Court reviews de novo the circuit court's determination whether the district court abused its discretion. An abuse of discretion occurred if the result was so violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or an exercise of passion or bias." *Id.*

The district court did not abuse its discretion when it bound defendant over on the charge of resisting or obstructing. MCL 750.479 proscribes knowingly and willingly obstructing or resisting any of the listed officials in the course of their described duties. With respect to police officers, the statute is "intended to protect police officers engaged in 'ordinary police functions,' including those 'that do not directly involve placing a person under arrest.'" *People v Wess,* 235 Mich App 241, 243; 597 NW2d 215 (1999), quoting *People v Little,* 434 Mich 752, 759; 456 NW2d 237 (1990). Resisting arrest and interfering with an officer's attempts to perform some other official duty are two different crimes. "Although the lawfulness of

---

[1] On appeal, defendant also argues that there was not probable cause to charge him with OUIL, DWLS, and possession of a firearm while under the influence of intoxicants. Regarding the first two of these charges, there was ample record evidence that defendant was operating a vehicle while intoxicated and with a suspended license. Defendant's argument regarding whether he "possessed" a weapon is advanced only in the context of his similar argument that he did not "carry" a concealed weapon, which is considered below, and we will not consider the "possession" argument separately on appeal.

an arrest is an element of the former, it is not element of the latter." *Wess, supra* at 244.

Contrary to defendant's assertion, the prosecution did not have to offer proof that defendant's arrest was lawful because defendant was not charged with resisting arrest. Defendant was charged with interfering with the officers in their official duty of investigating a complaint. Regardless of defendant's unsupported protestations on appeal, the police responded to the Wixom plant to investigate a situation after being called by Ford security about defendant and his car. Because there was evidence that defendant resisted or obstructed the officers while they were lawfully investigating the situation, the district court did not abuse its discretion in binding defendant over on the charge. The motion to quash this charge was properly denied by the circuit court.

Defendant further argues that his motion to quash the CCW charge should have been granted because there was insufficient evidence that he was "carrying" the gun found in a briefcase in the trunk of his car.[2] MCL 750.227(2) provides:

> *A person shall not carry a pistol* concealed on or about his or her person, or, *whether concealed or otherwise, in a vehicle operated or occupied by the person*, except in his or her dwelling house, place of business, or on other land possessed by the person, *without a license to carry the pistol* as provided by law and if licensed, shall not carry the pistol

---

[2] Defendant also argues that there was no evidence that he operated or occupied the vehicle. However, even if there were insufficient evidence presented at the preliminary examination, that deficiency is harmless because sufficient evidence was presented at trial to prove this element of the offense. See, generally, *People v Hall*, 435 Mich 599; 460 NW2d 520 (1990).

in a place or manner inconsistent with any restrictions upon such license. [Emphasis added.]

Circumstantial evidence and reasonable inferences drawn from it may establish the elements of a crime. *People v Maynor*, 256 Mich App 238, 245; 662 NW2d 468 (2003), lv gtd on another ground 468 Mich 943 (2003).

The issue presented, i.e., the meaning of the term "carry" as used in MCL 750.227(2) with respect to motor vehicles, is one of statutory interpretation.

> "In considering a question of statutory construction, this Court begins by examining the language of the statute. We read the statutory language in context to determine whether ambiguity exists. If the language is unambiguous, judicial construction is precluded. We enforce an unambiguous statute as written. Where ambiguity exists, however, this Court seeks to effectuate the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished."
>
> Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used, and if a term is not expressly defined in the statute, it is permissible for this Court to consult dictionary definitions in order to aid in construing the term "in accordance with [its] ordinary and generally accepted meaning[]." [*People v Lange*, 251 Mich App 247, 253-254; 650 NW2d 691 (2002), quoting *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 158; 627 NW2d 247 (2001), and *People v Morey*, 461 Mich 325, 350; 603 NW2d 250 (1999) (citations omitted).]

In *People v Hill*, 257 Mich App 126, 145; 667 NW2d 78 (2003), this Court recently reiterated that undefined statutory terms are to be given their plain and ordinary meanings and that it is appropriate to consult a dictionary to obtain the definitions. The ordinary defi-

nition of the word "carry" includes to "take from one place to another," or "transport." *Random House Webster's College Dictionary* (1992). Similarly, Black's Law Dictionary (5th ed) defines "carry" as "to bear, bear about, sustain, transport, remove or convey."

This Court has stated that the purpose of MCL 750.227(2) is to prevent the carrying of unlicensed pistols in motor vehicles. *People v Cortez*, 206 Mich App 204, 206; 520 NW2d 693 (1994). The statute "recognizes the facility of motor vehicles for concealing and transporting arms." *Id.* The Legislature's intent and purpose in enacting the statute is effectuated through application of the ordinary dictionary definition of the term "carry," meaning to transport or convey. In this case, there was evidence that defendant was knowingly[3] carrying, i.e., transporting or conveying, from one place to another, the pistol that was found concealed in the trunk of the car that he was driving.

In light of the ordinary definition of "carry" and the purpose of the statute, we would conclude that this was sufficient to charge and convict defendant of "carrying" a pistol in violation of MCL 750.227(2). However, the Supreme Court in *People v Butler*, 413 Mich 377, 384-385; 319 NW2d 540 (1982), concluded that additional proof of "carrying," beyond mere operation of a vehicle with knowledge that it contains a weapon, is required. The Court did not define the "exact contours" of such proof, but noted factors considered in decisions from a number of other states:

---

[3] Defendant does not contend that he did not know that the weapon was in the trunk. We express no opinion whether such knowledge is a necessary element of the offense, i.e., whether a defendant without this knowledge could properly be convicted.

> Hard and fast rules regarding what circumstantial evidence is sufficient to sustain a conviction of carrying a weapon in a motor vehicle have not evolved. The decisions have, however, emphasized the relevancy of the following factors either alone or in combination: (1) the accessibility or proximity of the weapon to the person of the defendant, (2) defendant's awareness that the weapon was in the motor vehicle, (3) defendant's possession of items that connect him to the weapon, such as ammunition, (4) defendant's ownership or operation of the vehicle, and (5) the length of time during which defendant drove or occupied the vehicle.
>
> We do not wish to be understood, by reference to the foregoing factors, as expressing any view with regard to their relevancy or importance. [*Id.* at 390 n 11 (citations omitted).]

In this case, the weapon was accessible to defendant, who was leaning inside the open trunk, in proximity to it, when first approached by the police. The weapon was found with ammunition and other items within the brief case that connected defendant to it, and defendant owned the vehicle in which the weapon was found. Considering the factors listed in *Butler,* we conclude that there was ample evidence here to charge and convict defendant of the offense.

### RIGHT TO AN INDEPENDENT CHEMICAL TEST

Defendant next argues that the police violated MCL 257.625a by failing to advise him of certain chemical rights under MCL 257.625a(6)(b). This issue was raised before and decided by the trial court, which determined that there was no obligation for the officers to advise defendant of his rights because he was not initially arrested for OUIL.

We review a trial court's findings of fact under the clearly erroneous standard; we review de novo ques-

tions of law. *People v Gilmore*, 222 Mich App 442, 459; 564 NW2d 158 (1997). In pertinent part, MCL 257.625a(6)(b)(i) provides that a person arrested for OUIL "shall be advised" that, "If he or she takes a chemical test of his or her blood, urine, or breath administered at the request of a police officer, he or she has the right to demand that a person of his or her own choosing administer 1 of the chemical tests." We agree with defendant that the record, while somewhat contradictory, supports the conclusion that he was actually arrested, in part, for OUIL. As such, he should have been advised under MCL 257.625a(6)(b). We disagree, however, that dismissal of the charge for OUIL was the appropriate remedy for the failure to so advise him.

The purpose of the statute was explained in *People v Dicks*, 190 Mich App 694, 699; 476 NW2d 500 (1991):

> In *People v Koval*, 371 Mich 453, 458; 124 NW2d 274 (1963), our Supreme Court found that the then existing statute, which does not significantly differ from the current one, was enacted for the protection and benefit of motorists charged with driving while under the influence of intoxicating liquor. Thus, it may be said that the Legislature intended that the scientific evidence shall not be at the sole disposal of either party, and it ensured this result by allowing police to administer one test and allowing the accused to choose an independent person to administer a second chemical test.

In *People v Hurn*, 205 Mich App 618, 620; 518 NW2d 502 (1994), this Court recognized that "[d]ismissal of an OUIL charge is an appropriate remedy when a defendant is deprived of an opportunity to obtain exculpatory evidence by an independent test." See also *Koval, supra* at 458-459; *Dicks, supra* at 700-701; *People v Underwood*, 153 Mich App 598, 599-600; 396

NW2d 443 (1986). However, in *People v Dewey,* 172 Mich App 367, 373; 431 NW2d 517 (1988), this Court determined, consistently with the language and purpose of the statute, that "the right of an accused to obtain an 'independent' chemical test [is] conditioned upon the taking of a chemical test administered at the request of police officers."

Because the purpose of MCL 257.625a(6)(b) is to protect the motorist by ensuring that scientific evidence is not gathered by, and at the sole disposal of, only one party, dismissal of an OUIL charge may be appropriate where a defendant is deprived of his right to an independent test. That is not, however, the factual situation here. In this case, it is clear that the police never requested that defendant take a chemical test; instead, chemical testing was undertaken at the hospital, as part of defendant's care. (See discussion below.) Defendant was not entitled under the statute to an independent chemical test where he did not take a test administered at the request of police officers. *Dewey, supra.* Thus, defendant was not prejudiced by the police officers' failure to advise him of his rights and he is entitled to no relief. See *People v Hana,* 447 Mich 325, 358 n 10; 524 NW2d 682 (1994), amended 447 Mich 1203 (1994); *People v Lucas,* 188 Mich App 554, 573; 470 NW2d 460 (1991).

ADMISSIBILITY OF BLOOD TEST EVIDENCE

Defendant next argues that results of the blood test administered at the hospital following his arrest were improperly admitted under MCL 257.625a(6)(e), the accident exception to the physician-patient privilege. This issue was raised in the trial court through a motion to suppress, which was denied. We review a

trial court's findings of fact at a suppression hearing for clear error. *People v Wilson*, 257 Mich App 337, 351; 668 NW2d 371 (2003). Clear error exists where this Court is left with a definite and firm conviction that a mistake was made. *People v Callon*, 256 Mich App 312, 321; 662 NW2d 501 (2003). The ultimate decision on a motion to suppress is reviewed de novo. *Wilson, supra.*

MCL 257.625a(6)(e) states:

> If, after an accident, the driver of a vehicle involved in the accident is transported to a medical facility and a sample of the driver's blood is withdrawn at that time for medical treatment, the results of a chemical analysis of that sample are admissible in any civil or criminal proceeding to show the amount of alcohol or presence of a controlled substance or both in the person's blood at the time alleged, regardless of whether the person had been offered or had refused a chemical test. The medical facility or person performing the chemical analysis shall disclose the results of the analysis to a prosecuting attorney who requests the results for use in a criminal prosecution as provided in this subdivision. . . .

Defendant first argues that there was no "accident" here, as required for this statutory section to apply. In *People v Keskimaki*, 446 Mich 240, 248-249; 521 NW2d 241 (1994), the Court indicated that the purpose of the accident exception is to facilitate a drunken driver's safety by eliminating any potential delay in securing prompt medical attention. The Court declined to define the term "accident" according to the expansive definition used in insurance cases. *Id.* at 250. The Court also refrained from providing a general definition of "accident" for the purposes of all criminal statutes. *Id.* at 255. Instead, it ruled "that the determination whether an accident has occurred will

depend on an examination of all the circumstances surrounding an incident." *Id.* Relevant factors to consider include whether there has been a collision, i.e., a direct, violent striking together or crash, whether personal injury or property damage resulted from the occurrence, and whether the incident was undesirable for or unexpected by any of the parties involved. *Id.* at 255-256. The Court noted that the list of cited factors was not exhaustive. *Id.* at 256. The Court concluded that, in the case before it, there was no evidence to show an accident.

> The absence of a collision, personal injury, or property damage, and the seemingly expected and desired nature of defendant's actions in driving his car onto the side of the roadway, with lights on and engine running, compels us to conclude that the actions of the defendant cannot be construed as an accident within the meaning of the accident exception. [*Id.* at 257.]

In contrast, there was evidence of an accident here. Defendant's car was out of control, appeared to have run across grass and mud, was missing a tire, had damage to a rim, was smoking, and came to rest across several parking spaces. There clearly was property damage to the car. There was also evidence that defendant may have been injured. Witnesses described him as incoherent, violent and assaultive, and not acting like a person who was simply under the influence of alcohol. The trial court's finding that there was an accident was not clearly erroneous.

In addition to challenging the existence of an accident, defendant argues that there was no evidence that his blood was drawn for the purposes of medical treatment. Defendant's argument is cursory and devoid of citation of relevant authority and we con-

sider it abandoned. See *Connor, supra* at 430. Further, the argument is meritless. In *People v Kulpinski*, 243 Mich App 8, 26; 620 NW2d 537 (2000), this Court concluded that an objection to the defendant's blood alcohol test results would have been meritless where testimony indicated that "the test was done in response to a work order from an emergency room doctor and that the blood was drawn for medical purposes." See also *People v Aldrich*, 246 Mich App 101, 118-119; 631 NW2d 67 (2001) (testimony indicated that blood was drawn for medical reasons and the results were therefore admissible under MCL 257.625a[6][e]). Similarly, in this case, defendant's blood was drawn at the request of the emergency room doctor, for the purpose of determining whether any treatment was necessary.

### VEHICLE IMPOUNDMENT

Defendant next argues that his car was improperly impounded by the police. This issue was raised before the trial court, which denied defendant's motion to suppress evidence found when the vehicle was impounded and inventoried. Thus, it is preserved for review under the same standards employed in reviewing defendant's arguments regarding the suppression of blood test results discussed above. See *Wilson, supra; Callon, supra.*

In *People v Toohey*, 438 Mich 265, 279; 475 NW2d 16 (1991), the Court indicated that "courts need not second-guess a police officer's exercise of professional judgment regarding impoundment of an automobile when the judgment was exercised in accordance with otherwise reasonable police department regulations." Where there is a reasonable departmental policy

addressing when a vehicle may be impounded, and where the impoundment is reasonable in light of all of the facts and circumstances presented, there is no constitutional violation. *Id.* at 284-291.

Defendant argues that the city of Wixom adopted the Uniform Traffic Code promulgated by the state police. There is no evidence whatsoever on the record to support this contention. Further, there is no evidence to show that, even if that code were adopted, the Wixom Police Department did not have any additional, standard policy with respect to when a vehicle should be impounded.

To the contrary, Officer Watt testified that departmental policy calls for impoundment when a person is arrested and vehicles present a hazard or are illegally parked. Defendant does not contest the reasonableness of the department policy about which Watt testified. The testimony of police officers may be sufficient to establish the existence of a standard procedure or routine. See *United States v Lowe*, 9 F3d 43, 45-46 (CA 8, 1993), and *United States v Skillern*, 947 F2d 1268, 1275 (CA 5, 1991). See also *United States v Duguay*, 93 F3d 346, 351 (CA 7, 1996).

In this case, defendant's vehicle was on Ford Motor Company property, illegally parked across several visitor parking spaces, and was not operable because a front tire was missing. Defendant was under arrest and it was obvious that Ford personnel wanted both defendant and his car removed. The impoundment occurred because of the standard police department policy and was reasonable under the circumstances. Defendant's argument that, because the vehicle was on private property, it should not have been impounded is disingenuous. By defendant's own admission, the vehicle was trespassing on Ford's

property. We will not second-guess the officers' exercise of professional judgment regarding the impoundment of defendant's vehicle.

VEHICLE INVENTORY EVIDENCE

Defendant next argues that evidence obtained during the inventory of his vehicle should have been suppressed. This issue was raised before the trial court, which denied a motion to suppress the evidence. Again, we review this issue under the suppression standard discussed in relation to defendant's argument regarding the blood test evidence above. *Wilson, supra; Callon, supra.*

In *Toohey, supra* at 275, the Court quoted *South Dakota v Opperman,* 428 US 364, 369; 96 S Ct 3092; 49 L Ed 2d 1000 (1976), with approval to support the policy reasons for allowing inventory searches:

> "When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger. The practice has been viewed as essential to respond to incidents of theft or vandalism."

The Court ruled that "[a]n inventory search that is conducted pursuant to standardized police procedure is considered reasonable because the resulting intrusion will be limited to the extent it is necessary to fulfill the caretaking function." *Id.* at 275-276. The Court emphasized that standardized procedures protect the inventory search from being viewed as a pretext for the police to conduct an investigative search without

a warrant. *Id.* at 276. "The lack of an underlying motive or bad faith by the police in conducting an inventory search is an important aspect which courts must consider in determining the validity of such a search." *Id.*

In this case, there was a standardized police procedure requiring officers to "inventory all available areas of the motor vehicle and any containers contained within that motor vehicle," and to list "all personal property of value." Watt testified that he searched the vehicle with another officer and that he inventoried all areas of the vehicle. When Watt searched the trunk, he found the briefcase, opened it to inventory it, and found papers and a handgun. They were confiscated. Defendant's argument that the search of the closed briefcase was not conducted pursuant to standardized policy is disingenuous. The policy specifically required that the vehicle *and all containers* be inventoried. Policies requiring the opening of containers are permissible. *Florida v Wells*, 495 US 1, 4; 110 S Ct 1632; 109 L Ed 2d 1 (1990); *People v Poole*, 199 Mich App 261, 266; 501 NW2d 265 (1993). The searches of the vehicle and the closed briefcase were conducted in accordance with a standardized policy, and the trial court's finding of fact in this regard is not clearly erroneous.[4]

---

[4] Defendant makes a number of arguments regarding police failures to technically comply with record keeping requirements surrounding the search. Nonetheless, the search itself was properly conducted pursuant to the policy and the failures defendant points to do not render the otherwise valid inventory search here invalid. See *United States v Mayfield*, 161 F3d 1143, 1145 (CA 8, 1998); *United States v Loaiza-Marin*, 832 F2d 867, 869 (CA 5, 1987), citing *United States v Trullo*, 790 F2d 205, 206 (CA 1, 1986), and *United States v O'Bryant*, 775 F2d 1528, 1534 (CA 11, 1985).

Finally,[5] defendant argues that the trial court erred by failing to provide the jury with a number of instructions. The record is unclear about whether the various issues were preserved below; we will review them as though they were, determining whether, in their entirety, the instructions provided "fairly presented the issues to be tried and sufficiently protected defendant's rights." *Aldrich, supra* at 124. We do not conclude that defendant has shown any error requiring reversal. *People v Riddle*, 467 Mich 116, 124-125; 649 NW2d 30 (2002).

Defendant first argues that the jury should have been instructed that evidence of his silence could not be used as a basis for conviction on the charge of resisting or obstructing an officer. However, the charge of resisting or obstructing did not relate to defendant's silence in the face of initial questions by the police but, instead, as the jury was specifically instructed, to "the words or actions of the defendant [that] in fact interfered with the officer in carrying out" his duties. This instruction effectively removed from the jury's consideration defendant's failure to respond to earlier questions from the police.

Defendant also argues that the trial court should have instructed the jury regarding statutes that exempt pistols from licensing requirements while

---

[5] Defendant also raised issues regarding computation of sentencing guidelines and whether the statute at issue here unconstitutionally compromised his constitutional right to bear arms, neither of which need any consideration. The first is moot because defendant has fully served his sentence, *People v Rutherford*, 208 Mich App 198, 204; 526 NW2d 620 (1994), and the second is deemed abandoned because defendant only gave it cursory treatment with little or no citation of supporting authority, *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

being transported to and from certain places for certain purposes. See MCL 28.432a(h) and MCL 750.231a(1)(e). However, the facts here did not support instructions regarding these statutes, most notably because the evidence was undisputed that the weapon was fully loaded.

Defendant further contends that the statute prohibiting possession of a firearm while under the influence of intoxicants, MCL 750.237, does not allow conviction for constructive possession and that the jury should have been instructed accordingly. However, defendant cites no authority for his contention regarding the statute, it is contrary to interpretations of the word "possession" in other statutes, see, e.g., *People v Hill*, 433 Mich 464, 470-471; 446 NW2d 140 (1989), and we deem defendant to have abandoned this issue on appeal, *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

We affirm.