*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

DENNIS LEE SWENOR,

        Defendant-Appellee.

FOR PUBLICATION
March 18, 2021

No. 352786
Marquette Circuit Court
LC No. 19-000583-FH

Before: FORT HOOD, P.J., and SAWYER and SERVITTO, JJ.

SAWYER, J. (*dissenting*).

I respectfully dissent.

I agree with the majority that the law on inventory searches is clear that, while there must be a policy, it does not have to be in writing. But I disagree that the trial court's decision should be affirmed. For the reasons discussed below, I believe that the actions taken by the sheriff's department were reasonable under the Fourth Amendment, and I would reverse the trial court.

First, I conclude that the trial court plainly erred in concluding that there had to be a written policy to justify the impoundment of defendant's personal belongings and taking them to the jail along with defendant.[1] This Court, in *People v Green*,[2] held that the "testimony of police officers may be sufficient to establish the existence of a standard procedure or routine." In this case, the deputy testified that defendant's belongings were taken with him because "there wasn't really a good option to give the property to. So in those cases we try to take them in for safekeeping while

---

[1] The trial court's opinion states that the facts would have justified the inventory search of the items had the impoundment itself been lawful. Therefore, the central question is whether the sheriff's deputies acted properly in transporting defendant's belongings from the point of arrest to the jail, where the items were subject to an inventory search.

[2] 260 Mich App 392, 411; 677 NW2d 363 (2004), overruled on other grounds *People v Anstey*, 476 Mich 436; 719 NW2d 579 (2006).

the person is lodged, and we have to do an inventory search per our guidelines." The trial court relied on the Supreme Court's decision in *People v Toohey*[3] for the proposition that an impoundment or inventory policy must be in writing. But as the majority acknowledges, while *Toohey* did involve a written policy, that does not mean that it stands for the proposition that a policy must be written.

Analysis of this matter is complicated by the fact that impoundment cases typically involve the impoundment of automobiles. I find some assistance in the United States Supreme Court's decision in *Illinois v Lafayette*,[4] where the defendant was arrested for disturbing the peace and was taken to the police station, along with his shoulder bag. A subsequent search of the bag revealed the possession of controlled substances. The Court's opinion focuses more on the search of the bag than on its impoundment. But it is nevertheless instructive.

The Court[5] discussed the role of courts relative to these procedures:

> The Illinois court held that the search of respondent's shoulder bag was unreasonable because "preservation of the defendant's property and protection of police from claims of lost or stolen property, 'could have been achieved in a less intrusive manner.' For example, . . . the defendant's shoulder bag could easily have been secured by sealing it within a plastic bag or box and placing it in a secured locker." [*People v* Lafayette, 99 Ill App 3d 830, 835; 425 NE2d 1383; 55 Ill Dec 210 (1981)] (citation omitted). Perhaps so, but the real question is not what "could have been achieved," but whether the Fourth Amendment *requires* such steps; it is not our function to write a manual on administering routine, neutral procedures of the stationhouse. Our role is to assure against violations of the Constitution.
>
> The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means. In *Cady v Dombrowski,* 413 US 433; 93 S Ct 2523; 37 L Ed 2d 706 (1973), for example, we upheld the search of the trunk of a car to find a revolver suspected of being there. We rejected the contention that the public could equally well have been protected by the posting of a guard over the automobile. In language equally applicable to this case, we held, "[t]he fact that the protection of the public might, in the abstract, have been accomplished by 'less intrusive' means does not, by itself, render the search unreasonable." *Id.,* at 447, 93 S Ct, at 2531. See also *United States v Martinez-Fuerte,* 428 US 543, 557 n. 12, 96 S Ct 3074, 3082 n. 12, 49 L Ed 2d 1116 (1976). We are hardly in a position to second-guess police departments as to what practical administrative method will best deter theft by and false claims against its employees and preserve the security of the stationhouse. It is evident that a stationhouse search of every item carried on or by a person who has lawfully

---

[3] 438 Mich 265; 475 NW2d 16 (1991).

[4] 462 US 640; 103 S Ct 2605; 77 L Ed 2d 65 (1983).

[5] 462 US at 647-648.

been taken into custody by the police will amply serve the important and legitimate governmental interests involved.

Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit. Only recently in *New York v Belton,* 453 US 454, 101 S Ct 2860, 69 L Ed 2d 768 (1981), we stated: " '[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' " *Id.,* at 458-460, 101 S Ct, at 2863-2864, quoting *Dunaway v New York,* 442 US 200, 213-214, 99 S Ct 2248, 2257-2258, 60 L Ed 2d 824 (1979). See also *United States v Ross,* 456 US 798, 821, 102 S Ct 2157, 2170, 72 L Ed 2d 572 (1982).

Applying these principles, we hold that it is not "unreasonable" for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures.[3]

The Court's focus in *Lafayette* on whether the police acted reasonably is the key inasmuch as the Fourth Amendment protects against unreasonable searches and seizures. And the deputy's testimony reflects just that: what was the reasonable alternative available to those on the scene. It would seem to me that they had two alternatives: take defendant's belongings with him to the jail or abandon them in the Walmart parking lot. I am tempted to conclude that it would have been unreasonable for the police to leave behind those belongings to be scavenged by others, including the possibility that those belongings may have contained items that would be dangerous to come into the possession of those scavengers. But I will resist that temptation because I take to heart the admonition of the Supreme Court in *Lafayette* not to second-guess the police in how to carry out their community caretaking function. See also *Colorado v Bertine.*[6]

For these reasons, I conclude that the trial court plainly erred in holding that the procedures employed had to be part of a written departmental policy. I further conclude that the actions taken by the sheriff's department in this case were reasonable and within the bounds of the Fourth Amendment.

Accordingly, I would reverse the trial court.

/s/ David H. Sawyer

---

[6] 479 US 367, 374; 107 S Ct 738; 93 L Ed 2d 739 (1987) ("reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure.").