# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EDWARD LAMAR TROY,

        Defendant-Appellant.

UNPUBLISHED
February 23, 2017

No.   329525
Wayne Circuit Court
LC No.   13-008042-01-FH

Before:  JANSEN, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Defendant was convicted by a jury of possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b, and being a felon in possession of a firearm (felon-in-possession), MCL 750.224f.  He was sentenced as a fourth habitual offender, MCL 769.12, to five years' imprisonment for the felony-firearm conviction, to be served consecutively to a sentence of 6 to 60 months' imprisonment for the felon-in-possession conviction.  Defendant appeals as of right.  We affirm.

On May 16, 2013, a team of Detroit police officers with the narcotics enforcement unit executed a search warrant at 8208 Mansfield in the city of Detroit.  During the raid, the police discovered an assault rifle, a handgun, and small amounts of cocaine and marijuana in the northeast bedroom of the home.  According to the police officers who testified at defendant's trial, defendant was either in the northeast bedroom or in the process of exiting the bedroom when they forced entry into the Mansfield home.  Defendant also matched the description in the search warrant of the person who was suspected of selling drugs from the home.  Jessica Green testified that she rented the property from Quiana Williams and that defendant was the handyman who cared for the property.  According to Green, the firearms discovered in the northeast bedroom belonged to a friend of hers who had died.

## I.  INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant first alleges that he was denied the effective assistance of counsel. An ineffective assistance of counsel claim presents a mixed question of fact and constitutional law.  *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).  We review a trial

-1-

court's findings of fact for clear error and review constitutional questions de novo. *Id.* To preserve a claim of ineffective assistance of counsel, a defendant must bring a motion for a new trial or request a *Ginther*[1] hearing to establish the basis for the claim. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Because defendant did not move for a new trial or request an evidentiary hearing pursuant to *Ginther*, our review of his unpreserved claim is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

Both the United States and Michigan Constitutions guarantee a criminal defendant the right to the effective assistance of counsel. *People v Kammeraad*, 307 Mich App 98, 122; 858 NW2d 490 (2014), citing US Const, Am VI; Const 1963, art 1, § 20. Generally, to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). We presume that defense counsel rendered effective assistance and exercised reasonable professional judgment in all significant decisions. *Vaughn*, 491 Mich at 670. The defendant bears the burden of establishing the factual predicate of an ineffective assistance claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

On appeal, defendant argues that his trial counsel's performance was deficient in several respects. Initially, defendant argues that defense counsel was ineffective because he purportedly failed to move for a directed verdict at the conclusion of the prosecutor's case-in-chief. Despite defendant's contention, however, it is clear from the record that defense counsel *did* move for a directed verdict, although the motion was denied. We will not find defense counsel's performance deficient merely because his motion was unsuccessful. See *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). Defendant's claim of error in this respect lacks merit because the record does not support it.

Defendant also contends that defense counsel was ineffective because he did not employ a sound trial strategy. Specifically, defendant asserts that defense counsel failed to adequately investigate defendant's case, failed to subpoena Quiana Williams to testify at trial, refused to call defendant to testify, presented insufficient evidence to show that defendant did not reside at the Mansfield home, failed to impeach the prosecutor's witnesses with "readily accessible evidence," and inadequately supported the defense theory of the case. We disagree.

Although defendant argues that defense counsel did not adequately investigate his case, he fails to identify any specific information that would have been revealed with further investigation. In his brief on appeal, defendant refers to three witnesses with knowledge of relevant information: Green, Archie Williams, and Quiana Williams. Defense counsel clearly communicated with each of these witnesses in the course of his investigation. Green and Archie Williams both testified at trial, and Quiana Williams testified at an evidentiary hearing regarding

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

defendant's motion to suppress. Defense counsel also visited the Mansfield home and took several photographs that were admitted as evidence at trial. Therefore, defendant has failed to establish the factual predicate for his assertion that defense counsel's investigation was inadequate.

"Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Although a defense attorney's decision not to call a witness can result in ineffective assistance if it deprives the defendant of a substantial defense, *id.*, the record does not suggest that defense counsel's failure to call Quiana Williams had that effect. "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (quotation marks and citation omitted). Defense counsel relied on a two-part strategy at trial, focusing on the lack of evidence that defendant lived at the Mansfield house and attacking the credibility of the police officers involved in procuring and executing the search warrant. There is no indication in the lower court record that Quiana would have been able to speak to the officers' credibility, and defense counsel was able to present his theory regarding defendant's place of residence without calling Quiana as a witness.

Defense counsel elicited testimony from three police officers indicating that they searched for, but were unable to locate, proof of residency connecting defendant to the Mansfield property. Likewise, he elicited testimony from Archie Williams indicating that defendant's relationship to the house was, essentially, that of a landlord, and Green described defendant as a handyman. We note that there was testimony indicating that Quiana and defendant had an unstable romantic relationship and, in the course of the pretrial proceedings, defense counsel indicated that Quiana was initially uncooperative with his investigation. In light of their on-again, off-again romantic involvement, and Quiana's grudging participation in the pretrial proceedings, defense counsel could have reasonably concluded that she would be an unreliable witness. Although defendant does not attempt to establish what testimony Quiana may have offered if she was called as a witness at trial, her evidentiary hearing testimony suggests that her testimony would have been largely duplicative. Admittedly, Quiana did testify that defendant had lived somewhere other than the Mansfield home for several years. However, even if Quiana provided similar testimony at defendant's trial, such testimony would not have prevented the jury from finding that defendant constructively possessed[2] the items that were seized from the northeast bedroom. Moreover, Quiana's testimony at the evidentiary hearing was intended to demonstrate that defendant had a stronger connection to the house than that of a mere handyman, which would have been inconsistent with the defense strategy of minimizing defendant's connection to the property. Accordingly, defendant has failed to overcome the presumption that defense counsel's decision to forego calling Quiana as a witness was anything other than sound trial strategy.

---

[2] "Although not in actual possession, a person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing[.]" *People v Flick*, 487 Mich 1, 14; 790 NW2d 295 (2010) (quotation marks and citation omitted).

Defendant next contends that defense counsel refused to allow him to testify. A defendant has a constitutional right to testify in his or her own defense. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Defense counsel must advise the defendant about the consequences of that choice, but "the ultimate decision whether to testify at trial remains with the defendant." *Id*. Nothing in the record suggests that defense counsel refused to allow defendant to testify at his trial.[3] Therefore, defendant has failed to establish the factual predicate for this claim of error.

Next, defendant argues that defense counsel failed to present sufficient evidence that defendant did not reside at the Mansfield home, and failed to impeach the prosecutor's witnesses with "readily accessible evidence." As already noted, defense counsel elicited testimony from three of the prosecutor's witnesses indicating that they were unable to locate proof of residency during their search of the property. Defense counsel also asked Archie Williams if defendant lived at "another location" with Quiana, although Archie was ultimately unable to say with certainty where defendant lived. Although it may have been advisable for defense counsel to present additional evidence concerning defendant's residence, "[t]he fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *Stewart*, 219 Mich App at 42. We will not substitute our judgment for that of defendant's trial counsel regarding matters of trial strategy, or assess defense counsel's performance with the benefit of hindsight. See *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Further, even if we were to find that defense counsel's performance in this regard fell below an objective standard of reasonableness, defendant cannot show with a reasonable probability that the outcome of his trial would have been different in the absence of the alleged error. The lack of evidence definitively showing that defendant resided at the Mansfield home was a constant theme of the defense theory throughout the trial. However, the credibility of this theory was significantly damaged by testimony indicating that defendant, himself, provided the Mansfield address as his place of residence to the police when he was arrested. Likewise, defendant's purported residency at another location was undermined by tax records, which reflected that defendant repeatedly represented to the Wayne County Treasurer's Department that he was the owner or taxpayer of the Mansfield property and provided that location as his mailing address. Therefore, even if defense counsel had offered additional evidence showing that defendant did not live at the Mansfield home, there is no reason to believe that the jury would have found it more persuasive than the evidence suggesting that defendant did live there.

Finally, defendant argues that he was denied the effective assistance of counsel during the pretrial proceedings because defense counsel allowed his personal feelings toward Judge Lawrence S. Talon to interfere with his obligations to defendant. Although most claims of ineffective of assistance of counsel are reviewed under the two-part test set forth in *Strickland*, in *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984), the United States Supreme Court identified three situations in which an attorney's performance is so deficient that

---

[3] Defendant did not waive his right to testify on the record, but an on-the-record waiver is not required in Michigan. See *People v Harris*, 190 Mich App 652, 661; 476 NW2d 767 (1991).

prejudice is presumed. See *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). One of these situations occurs when a defendant is completely denied the assistance of counsel at a critical stage of the proceedings. *Id.* A "critical stage" is any stage at which "counsel's absence may harm the defendant's right to a fair trial." *People v Green*, 260 Mich App 392, 399; 677 NW2d 363 (2004) (quotation marks and citation omitted), overruled on other grounds by *People v Anstey*, 476 Mich 436, 447 n 9 (2006). "In other words, the right to counsel applies to preliminary proceedings where rights may be sacrificed or defenses lost." *Id.*

The day before defendant's jury trial was scheduled to begin, defense counsel filed a motion to suppress the evidence seized from the Mansfield home. When the parties appeared in court the following day, January 14, 2014, a witness whose testimony was necessary to establish standing for the motion was not present. Judge Talon agreed to an adjournment, but also assessed defense counsel "the cost for bringing the jury in today." Defense counsel proceeded to engage in a debate with Judge Talon on the record regarding the propriety of the sanction. In fact, defense counsel continued to ignore and interrupt Judge Talon's orders until Judge Talon had defense counsel taken into custody for contempt of court. While in custody, defense counsel complained of chest pains and was transported to the hospital for medical care.

After defense counsel returned to work, he filed a motion to disqualify Judge Talon, arguing that Judge Talon had incarcerated him without cause and demonstrated actual bias and prejudice against him. At each of the three subsequent hearings at which defense counsel appeared before Judge Talon, defense counsel behaved in what can only be described as a ridiculously unprofessional manner. For example, he continuously interrupted Judge Talon, used profane and derogatory language, and frequently indicated that he could not proceed with the hearings because of a variety of purported ailments. Defense counsel's antics were increasingly erratic and eventually resulted in a second contempt order.

There can be no question that defense counsel displayed an unacceptably contentious attitude and complete lack of professional respect toward the court during the vast majority of the pretrial proceedings at which Judge Talon presided. As already noted, defense counsel's behavior was so outrageous that he was held in contempt on two occasions. Defense counsel's removal from the courtroom left defendant without an attorney for the remainder of the proceedings on those days. Although a complete denial of counsel during a critical stage in the proceedings is generally considered a structural, constitutional error that requires reversal, *People v Collins*, 298 Mich App 458, 470; 828 NW2d 392 (2012), it does not appear that the portions of the hearings at which defendant was unrepresented were critical stages.

In *Collins*, this Court held that the defendant was not entitled to reversal where he was unrepresented at a bond hearing. *Id.* The Court reasoned that the bond hearing was not a "critical stage" because it did not affect the determination of the defendant's guilt or innocence—there was no jury present and the jury was not informed that the defendant's bond had been revoked. *Id.* Similarly, the proceedings that took place after defense counsel was removed from the courtroom did not affect the determination of defendant's guilt or innocence; the court continued the record only for the purpose of advising defendant that defense counsel had been held in contempt and when he should return to court for continued proceedings with defense counsel's presence. Although Judge Talon ruled on defendant's motion for disqualification as defense counsel was being escorted from the courtroom for the second time, he had already

articulated the basis for his ruling before defense counsel was removed. More importantly, defendant was ultimately granted an evidentiary hearing before a different judge regarding his motion to suppress, another judge presided over defendant's jury trial, and the jury was not given any information about defendant's motion to disqualify Judge Talon or defense counsel's contemptuous pretrial behavior. Thus, defendant is not entitled to reversal on those grounds.

To the extent that defense counsel was present during the pretrial proceedings before Judge Talon, defendant's claim of error does not fall within the rare situations governed by *Cronic* and is, therefore, subject to review under the *Strickland* standard. We are unable to imagine a set of circumstances in which it would be reasonable for an attorney to repeatedly taunt and denigrate the presiding judge, leave the courtroom before the proceedings were finished, and otherwise demonstrate the level of disrespect shown by defense counsel in this case. It is clear that defense counsel was focused on the perceived indignities he suffered, rather than advocating for defendant's interests.

Despite defense counsel's objectively unreasonable performance between January 14, 2014, and February 25, 2014, it does not appear that the outcome of the proceedings would have been different had defense counsel refrained from pursuing his personal vendetta against Judge Talon during his representation of defendant. Defendant was granted an evidentiary hearing on his motion to suppress, and his trial was held before a different judge. At trial, defense counsel employed a viable strategy and subjected the prosecutor's witnesses to rigorous cross-examination. There is no indication that defendant's trial was affected in any manner by defense counsel's outlandish behavior toward Judge Talon. Accordingly, defendant is not entitled to relief on the basis of defense counsel's unreasonable pretrial conduct.

## II. MOTION TO SUPPRESS

Defendant next argues that the trial court erred by denying his motion to suppress the evidence seized from the Mansfield home because the content of the search warrant affidavit was insufficient to establish probable cause that contraband would be found at the property at the time the police executed the warrant. As an initial matter, we note that the trial court did not rule on whether the search warrant affidavit sufficiently demonstrated probable cause for the issuance of the warrant in this case. Rather, the court denied defendant's motion to suppress because he failed to establish that he had standing to challenge the search warrant. On appeal, defendant argues only that the search warrant was not supported by probable cause, without addressing whether the trial court properly found that he lacked standing. Because defendant failed to dispute the basis of the court's ruling, we need not consider his claim of error regarding the trial court's denial of his motion to suppress. See *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Moreover, the trial court properly denied defendant's motion because he failed to establish that he had standing to challenge the search warrant.

Both the United States and Michigan Constitutions guarantee the right to be free from unreasonable searches and seizures. *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000), citing US Const, Am IV; Const 1963, art 1, § 11. However, the right to be free from unreasonable searches and seizures is a personal right that cannot be invoked by third parties. *People v Brown*, 279 Mich App 116, 130; 755 NW2d 664 (2008).

For an individual to assert standing to challenge a search, the individual must have had a legitimate expectation of privacy in the place or location searched, which expectation society recognizes as reasonable. The defendant has the burden of establishing standing, and in deciding the issue, the court should consider the totality of the circumstances. Factors relevant to the determination of standing include ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. [*Id*. (quotation marks and citations omitted).]

The trial court ruled that defendant did not have standing to challenge the search warrant, noting that defendant had a key to the Mansfield home so he could access it for professional reasons and not to enable him to come and go whenever he pleased. Testimony at the suppression hearing demonstrated that defendant was required to give notice of his entry and that he honored that requirement. Accordingly, the court concluded that defendant's access to the home in the course of his employment did not make him a guest with a legitimate expectation of privacy. The court compared defendant's position to that of a property manager at a 300-unit apartment complex and opined that a manager would not have an expectation of privacy in every unit merely because he had a key and could inspect the premises.

We agree with the trial court's reasoning and conclusion. The evidence presented at the evidentiary hearing suggested that Quiana Williams owned the property, Green was her tenant, and defendant served as a property manager who also provided maintenance services. Quiana stated that defendant lived elsewhere and had done so for years. Although Quiana also indicated that defendant had complete control over the property, this testimony was at odds with general landlord-tenant principles and other testimony that defendant was required to give Green advance notice of any entry. Apart from Quiana's testimony that defendant had a key to the home and her questionable assertion that defendant had complete control over the property, there was no evidence to suggest that defendant had a subjective expectation of privacy in the home, let alone an objectively reasonable one. Although evidence was later adduced at trial that might have given more credence to defendant's alleged expectation of privacy, he bore the burden of establishing standing to challenge the search warrant, *Brown*, 279 Mich App at 130, and failed to meet that burden in this case. Because defendant did not adequately demonstrate standing to challenge the search warrant, his probable cause argument is moot.

III. DOUBLE JEOPARDY

Finally, defendant argues that his convictions and sentences for felony-firearm and felon-in-possession violate state and federal protections against double jeopardy because they constitute multiple punishments for the same offense. We disagree.

To preserve a double jeopardy claim, the defendant must raise the issue at the trial court level. *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008). Defendant failed to raise this issue before the trial court, so it is unpreserved. Nonetheless, "a double jeopardy issue presents a significant constitutional question that will be considered on appeal regardless of

-7-

whether the defendant raised it before the trial court." *Id*. We review an unpreserved claim that a defendant's double jeopardy rights were violated for plain error affecting substantial rights. *Id*. "Reversal is appropriate only if the plain error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

The Double Jeopardy Clauses of the United States and Michigan Constitutions protect a defendant against successive prosecutions and multiple punishments for the same offense. *People v Miller*, 498 Mich 13, 17; 869 NW2d 204 (2015), citing US Const, Am V; Const 1963, art 1, § 15. The authority to define crime and fix punishment belongs to the Legislature. *People v Calloway*, 469 Mich 448, 451; 671 NW2d 733 (2003). The constitutional protection against multiple punishments "is designed to ensure that courts confine their sentences to the limits established by the Legislature and therefore acts as a restraint on the prosecutor and the Courts." *Miller*, 498 Mich at 17-18 (quotation marks and citations omitted). Accordingly, there is no double jeopardy violation when a defendant is convicted and sentenced under multiple statutes that specifically authorize cumulative punishment for the same conduct. *Id*. at 18.

This Court has previously considered and rejected the notion that simultaneous convictions for felon-in-possession and felony-firearm offend double jeopardy protections. See *People v Dillard*, 246 Mich App 163, 167-170; 631 NW2d 755 (2001). The Michigan Supreme Court has also addressed this issue and reached the same conclusion. *Calloway*, 469 Mich at 451-452. In *Calloway*, our Supreme Court explained that, "with the exception of the four enumerated felonies [in MCL 750.227b], it was the Legislature's intent to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute." *Calloway*, 469 Mich at 452 (quotation marks and citation omitted).[4] Because the felon-in-possession statute is not one of the enumerated exceptions in MCL 750.227b, it is clear that a defendant can be convicted and sentenced under both statutes without infringing upon the defendant's constitutional rights. *Calloway*, 469 Mich at 452; *Dillard*, 246 Mich App 167-168.

Defendant correctly notes that *Calloway* was decided in 2003, before our Supreme Court decided *People v Smith*, 478 Mich 292, 315-316; 733 NW2d 351 (2007), which held that the *Blockburger*[5] same elements test should be used to determine if two statutory offenses amount to the same offense for purposes of double jeopardy. However, it does not follow, as defendant contends, that the holding in *Smith* calls the outcome in *Calloway* into question. The *Smith* Court held that the *Blockburger* same elements test applies when statutory language does not show a clear legislative intent to impose multiple punishments. *Smith*, 478 Mich at 316. Yet, "[w]here the Legislature does clearly intend to impose such multiple punishments, imposition of

---

[4] The four felonies that are excluded from the scope of MCL 750.227b are: (1) unlawful sale of firearms or ammunition, MCL 750.223; (2) carrying a concealed weapon, MCL 750.227; (3) unlawful possession of a pistol by a licensee, MCL 750.227a; and (4) unlawful alteration of a firearm's identifying marks, MCL 750.230. MCL 750.227b(1).

[5] *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

such sentences does not violate the Constitution, regardless of whether the offenses share the same elements." *Id*. (quotation marks and citations omitted). *Calloway* was decided on the basis of clear legislative intent gleaned from the statutory language of MCL 750.227b, so its conclusion remains valid.

Defendant also argues that, because the felon-in-possession statute was enacted after the 1990 amendment of the felony-firearm statute, it is not clear that the Legislature intended to omit felon-in-possession from the list of enumerated exceptions. We have previously addressed and rejected this argument. See *Dillard*, 246 Mich App at 168. Because *Dillard* is binding on this Court pursuant to MCR 7.215(J)(1), defendant's identical argument must fail.

Affirmed.


/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Michael F. Gadola