PEOPLE v McKINLEY

Docket No. 236310. Submitted May 8, 2002, at Grand Rapids. Decided January 14, 2003, at 9:05 A.M.

Jerome A. McKinley was charged in the 8th District Court with resisting and obstructing a police officer during an investigation connected to an outstanding warrant for the defendant's arrest. Following a preliminary examination, the court, Vincent C. Westra, J., dismissed the charge, ruling that the sheriff's deputy who stopped the automobile the defendant was driving had validly made the stop because the deputy had reasonable suspicion to believe that its driver was subject to an arrest warrant, but that, because the deputy failed to orally identify himself as a police officer, there was insufficient probable cause for a bindover for trial in the circuit court. The Kalamazoo Circuit Court, Philip D. Schaefer, J., affirmed the district court's decision, agreeing with the district court that probable cause for a bindover was lacking and further holding that the initial traffic stop was invalid. The prosecution appealed by leave granted.

The Court of Appeals *held*:

1. The circuit court abused its discretion in ruling that the deputy had no basis to initiate a traffic stop of the defendant and that the traffic stop was invalid. The deputy had a reasonable suspicion that the defendant had committed a crime. The deputy was aware that there was a warrant for the defendant's arrest and the deputy had a description of the defendant and a description of the defendant's mother's automobile, which the defendant was driving. While waiting at the defendant's mother's residence, the deputy observed a vehicle matching the automobile's description approaching the residence and being driven by a person matching the defendant's description.

2. Both lower courts abused their discretion in ruling that there was insufficient evidence for a bindover because the deputy did not orally identify himself as a police· officer. MCL 257.311, which requires a driver to display his driver's license upon demand by a police officer who identifies himself as such, does not require that the officer orally identify himself as a police officer. The deputy activated the emergency equipment in his fully marked sheriff's

vehicle and was wearing his uniform when he approached the defendant. Thus, there were sufficient indicia that the deputy was a police officer to satisfy the statutory requirement that an officer identify himself as an officer when requesting a driver's license from a driver of a motor vehicle.

Reversed and remanded to the district court for further proceedings.

1. SEARCHES AND SEIZURES — INVESTIGATORY STOPS.

Police officers may make a valid investigatory stop if they possess reasonable suspicion that crime is afoot; a valid investigatory stop must be justified in its inception and must be reasonably related in scope to the circumstances that justified interference by the police with a person's security; justification must be based on an objective manifestation that the person stopped was or was about to be engaged in criminal activity as judged by those versed in the field of law enforcement when viewed under the totality of the circumstances.

2. AUTOMOBILES — OPERATORS — DISPLAY OF LICENSE UPON DEMAND BY A POLICE OFFICER.

The statute that provides that a driver of a motor vehicle shall display his driver's license upon demand of a police officer who identifies himself as such does not require that the officer orally identify himself as a police officer to the driver; the identification requirement is met where the officer activates the emergency equipment of his fully marked police vehicle and is in uniform (MCL 257.311).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Heather S. Bergmann*, Assistant Prosecuting Attorney, for the people.

*Levine & Levine* (by *Gary C. Giguere, Jr.*) for the defendant on appeal.

Before: WILDER, P.J., and BANDSTRA and HOEKSTRA, JJ.

WILDER, P.J. The prosecution appeals by leave granted orders of the 8th District Court and the Kalamazoo Circuit Court dismissing the charge against defendant. We reverse and remand.

I

Defendant was driving his mother's dark green Chevrolet Caprice at approximately 1:30 A.M. on November 2, 1999, and was observed traveling north on I-94 by Officer Brett Stapert of the Portage Police Department. For reasons not indicated on the record, Officer Stapert began following the vehicle and ran the license plate of the vehicle through the Law Enforcement Information Network (LEIN) system.[1] When the LEIN system returned the name of the owner of the vehicle, the officer recognized the owner as being defendant's mother. Officer Stapert was also aware that there was an outstanding warrant for defendant's arrest on a charge of first-degree criminal sexual conduct. The vehicle traveled beyond of the city limits, and Officer Stapert advised his dispatcher to contact the Kalamazoo County Sheriff's Department and request that they send a deputy to defendant's mother's residence to further investigate.

Deputy Craig Schmaltz, a Kalamazoo County sheriff's deputy assigned to traffic and patrol duty, overheard Officer Stapert's conversation with the Portage city dispatcher and was subsequently dispatched to defendant's mother's residence on Tulsa Street. The sheriff's department dispatcher advised Deputy Schmaltz of the registration information pertaining to the license plate, including information that the vehicle was a green, mid-80s Chevrolet Caprice four-door. The dispatcher also provided Deputy Schmaltz with defendant's name and date of birth. Deputy Schmaltz

---

[1] Defendant has not asserted that the police officer inappropriately followed the vehicle defendant was driving or that the officer should not have checked the license plate on the LEIN system.

obtained the Portage Police Department warrant entry through the mobile data terminal in his vehicle and received a description of defendant as a "fairly large black male in his early 20s."

As Deputy Schmaltz drove to the Tulsa Street residence he observed a vehicle matching the dispatcher's description approach him. Deputy Schmaltz noted that the driver was a large black male and, believing the driver to be defendant, he activated the emergency equipment on the fully marked sheriff's department vehicle he was driving and positioned his vehicle in such a way as to partially block the driveway entrance and prevent the suspect vehicle from going onto the driveway. Deputy Schmaltz then got out of his vehicle to initiate a traffic stop and approached the suspect vehicle to make contact with defendant, who was on his cell phone at the time. Deputy Schmaltz, who was also fully uniformed, arrived at defendant's vehicle and overheard defendant say into his cell phone that "the police are out here."

Deputy Schmaltz, who had never seen defendant before, told defendant that he believed defendant was wanted on an outstanding Portage warrant and asked for defendant's driver's license. Defendant refused to produce his license or identify himself. Deputy Schmaltz then told defendant he was under arrest for failure to produce his driver's license and ordered defendant to get out of the vehicle. After arguing with Deputy Schmaltz for a few minutes, defendant told the deputy that he was not going to give him his driver's license or otherwise identify himself and that he was going to leave. Defendant maneuvered his

vehicle around the sheriff's department's vehicle and left the scene.

Subsequently, Deputy Schmaltz reviewed a booking photograph of defendant and positively identified defendant as the driver of the vehicle who refused to identify himself at the Tulsa Street residence.

II

Defendant was arrested and charged with resisting and obstructing an officer while making an arrest. A preliminary examination was held on this charge, and the district court dismissed the charge without prejudice. The prosecution appealed. While the appeal was pending, the prosecution withdrew its appeal and recharged defendant with resisting and obstructing an officer during the investigation of an outstanding felony warrant. A preliminary examination was held on this charge and the district court dismissed the case. The district court found that the traffic stop of defendant was valid because the officer had reasonable suspicion to believe that the driver of the stopped vehicle was defendant. Nevertheless, the district court concluded that Deputy Schmaltz had not orally identified himself to defendant as a police officer and had therefore failed to identify himself within the meaning of MCL 257.311. Accordingly, the district court held that there was insufficient probable cause to bind defendant over for trial on the resisting and obstructing charge because defendant had no obligation to produce his driver's license at the officer's request and was free to leave the scene.

On appeal to the circuit court, the circuit court affirmed the dismissal of the charge. The circuit court

agreed with the district court's finding that, because of the deputy's failure to identify himself to a police officer, there was insufficient probable cause to bind over for trial. In addition, the circuit court found that the initial traffic stop was invalid and that the dismissal of the charge was appropriate on this basis as well. This Court granted the prosecution's application for leave to appeal.

III

The circuit court reviews the entire record of the preliminary examination to determine whether the district court's bindover decision constituted an abuse of discretion. *People v Orzame*, 224 Mich App 551, 557; 570 NW2d 118 (1997). This Court reviews de novo the circuit court's determination whether the district court abused its discretion. *Id.* An abuse of discretion occurred if the result was so violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or an exercise of passion or bias. *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000).

Whether Deputy Schmaltz identified himself as a police officer in accordance with the requirements of MCL 257.311 is a matter of statutory interpretation, a question of law that we review de novo. *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 469; 628 NW2d 577 (2001), citing *Oakland Co Bd of Co Rd Comm'rs v Michigan Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998); *In re S R*, 229 Mich App 310, 314; 581 NW2d (1998). We review de novo the application of the constitutional standard for lawful police stops to these facts. *People v*

*LoCicero (After Remand)*, 453 Mich 496, 500-501; 556 NW2d 498 (1996).

IV

In reviewing the district court decision not to bind defendant over to the circuit court for trial, the circuit court found that there was not a reasonable suspicion to justify the traffic stop initiated by Deputy Schmaltz. We disagree. In *People v Lewis*, 251 Mich App 58, 69-70; 649 NW2d 792 (2002), we noted the following in determining whether there was reasonable suspicion to support an investigatory stop:

> In *People v Champion*, 452 Mich 92, 98-99; 549 NW2d 849 (1996), our Supreme Court observed:
>
> "Police officers may make a valid investigatory stop if they possess 'reasonable suspicion' that crime is afoot. Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause.
>
> "A valid investigatory stop must be justified in its inception and must be reasonably related in scope to the circumstances that justified interference by the police with a person's security. Justification must be based on an objective manifestation that the person stopped was or was about to be engaged in criminal activity as judged by those versed in the field of law enforcement when viewed under the totality of the circumstances. The detaining officer must have had a particularized and objective basis for the suspicion of criminal activity." [Citations omitted.]
>
> In [*People v Oliver*, 464 Mich 184, 192-196; 627 NW2d 297 (2001),] the Supreme Court expanded on its prior discussion of "reasonable suspicion":
>
> "[I]n determining whether the totality of the circumstances provide reasonable suspicion to support an investigatory stop, those circumstances must be viewed 'as understood and interpreted by law enforcement officers, not legal

scholars . . . .' Also, '[c]ommon sense and everyday life experiences predominate over uncompromising standards.'

\*       \*       \*

" 'In analyzing the totality of the circumstances, the law enforcement officers are permitted, if not required, to consider "the modes or patterns of operation of certain kinds of lawbreakers. From [this] data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person." ' " [Citations omitted.]

From the record presented it is clear that Deputy Schmaltz had a reasonable suspicion that defendant had committed a crime. While he did not know defendant, he was aware that there was a felony warrant for defendant's arrest and had a description of defendant from the warrant entry. He observed a vehicle matching the description of defendant's mother's vehicle driving toward defendant's mother's home, and he observed that the driver appeared to match the description of defendant from the warrant entry. Thus, Deputy Schmaltz clearly had a basis to investigate whether the person he observed driving the dark green Chevrolet Caprice was defendant. Thus, the circuit court erred in finding there was no basis for the traffic stop.

The lower courts also erred in finding that because he did not orally identify himself as a police officer, Deputy Schmaltz had failed to identify himself within the meaning of MCL 257.311, and that, accordingly, defendant's failure to produce his driver's license at Deputy Schmaltz' request did not constitute sufficient probable cause to bind defendant over to circuit court for trial. In *Macomb Co Prosecutor v Murphy*,

464 Mich 149, 158; 627 NW2d 247 (2001), our Supreme Court stated:

> In considering a question of statutory construction, this Court begins by examining the language of the statute. We read the statutory language in context to determine whether ambiguity exists. If the language is unambiguous, judicial construction is precluded. We enforce an unambiguous statute as written. Where ambiguity exists, however, this Court seeks to effectuate the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished. [Citations omitted.]

"Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used," *Phillips v Jordan*, 241 Mich App 17, 22 n 1; 614 NW2d 183 (2000), citing *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 539; 565 NW2d 828 (1997), and if a term is not expressly defined in the statute, it is permissible for this Court to consult dictionary definitions in order to aid in construing the term "in accordance with [its] ordinary and generally accepted meaning[]." *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999), citing *Oakland Co Bd, supra* at 604. "[N]othing [should] be read into a statute that is not within the manifest intent of the Legislature as [indicated by] the act itself," *In re S R, supra* at 314, and the language must be applied as written, *Camden v Kaufman*, 240 Mich App 389, 394; 613 NW2d 335 (2000); *Ahearn v Bloomfield Charter Twp*, 235 Mich App 486, 498; 597 NW2d 858 (1999).

MCL 257.311 provides that:

> The licensee shall have his or her operator's or chauf-
> feur's license, or the receipt described in section 311a, in
> his or her immediate possession at all times when operating
> a motor vehicle, and shall display the same upon demand of
> any police officer, who shall identify himself or herself as
> such.

There is no dispute that Deputy Schmaltz was a police officer within the meaning of the statute, as MCL 257.42, § 42 of the Michigan Vehicle Code, defines the term "police officer" to include every sheriff's deputy. However, both lower courts interpreted the word "identify" in the statute to mean *orally* identify. This interpretation was erroneous. The term "identify" is not defined in the statute or the vehicle code, thus, we consult the *Random House Webster's College Dictionary* (2001), to construe the term "identify" to mean "to recognize or establish as being a particular person or thing."

Deputy Schmaltz had activated the emergency equipment in his fully marked sheriff's department vehicle and approached defendant while he was fully uniformed as a Kalamazoo County sheriff's deputy. We hold that as a matter of law, such indicia are sufficient to satisfy the statutory requirement that an officer identify himself as an officer when requesting a driver's license from a person who was operating a motor vehicle. Clearly, these indicia establish instant recognition that the person so attired is a police officer (rare indeed is the speeding motorist who, seeing such indicia, does not immediately apply the brakes of his vehicle or take the foot off the gas pedal).

We reject defendant's contention that the absence of language in MCL 257.311 requiring that the officer

requesting the license be in uniform or an official police vehicle, in contrast with MCL 750.479a, demonstrates the Legislature's intention to require an officer to do more than be in uniform or a official police vehicle to identify himself as a police officer. MCL 750.479a prohibits a person who is operating a motor vehicle from using that motor vehicle to flee and elude a police officer who is acting in the lawful performance of his duty, and applies only in instances where the officer is in uniform and in an official police vehicle identified as such. The fact that a person cannot be charged under this section for fleeing and eluding a nonuniformed officer is consistent with the fact that the ability of an operator of a motor vehicle to identify a police officer as a police officer is best facilitated through the indicia of the police uniform and officially marked vehicle.[2] Under MCL 257.311, however, not only can identification of the officer occur by observation of the officer's uniform and fully marked vehicle, in the case of a nonuniformed police officer, identification can occur by use of a badge or oral or other identification.

We also note that, setting aside our interpretation of the statutory language, the preliminary examination testimony supports the conclusion that defendant was aware of the deputy's identity as a police officer. The undisputed testimony was that Deputy Schmaltz overheard defendant tell the person at the other end of his cell phone conversation that "the police are out here."

---

[2] It is ironic in light of defendant's argument in this regard that the preliminary examination testimony established that Deputy Schmaltz *was* in uniform and used his officially marked vehicle to block defendant's entrance into his mother's driveway.

V

The circuit court abused its discretion in finding that Deputy Schmaltz had no basis to initiate a traffic stop of defendant and that the traffic stop was invalid. Furthermore, the district court and circuit court each abused its discretion in finding that Deputy Schmaltz failed to identify himself as a police officer within the meaning of MCL 257.311 and that there was insufficient evidence to bind defendant over to circuit court for trial on the pending charge. Accordingly, we reverse and remand to the district court for further proceedings consistent with this opinion.

We do not retain jurisdiction.