*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DOUGLAS ARNELL PRUDE,

        Defendant-Appellant.

UNPUBLISHED
March 23, 2023

No. 360234
Kalamazoo Circuit Court
LC No. 2019-001338-FH

Before: K. F. KELLY, P.J., and BOONSTRA and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of second-degree fleeing and eluding, MCL 257.602a(4), and assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to nine months in jail for his fleeing and eluding conviction, and nine months in jail for the assaulting, resisting, or obstructing a police officer conviction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the detainment of defendant by two police officers, Officer Nicholas Deleeuw and Officer Nathan Belen, following suspicions of defendant's trespassing in an apartment complex parking lot in Kalamazoo, Michigan. The two officers, in full uniform and in separate, marked patrol units, were on directed patrol at the apartment complex because of repeated calls to investigate crime on the property. Officer Deleeuw initially approached defendant alone, and asked for identification and whether defendant was a tenant. Defendant refused to identify himself but stated that he stayed with a girlfriend who resided at the complex. Officer Belen arrived, parked his vehicle, and walked to the passenger side window of defendant's car. Officer Deleeuw explained to defendant that he needed to be with a resident while on the property and went to verify defendant's tenant status through the Law Enforcement Information Network (LEIN) and I/LEADS, an internal reporting and documentation system detailing prior problematic interactions between persons on the property, to discover if defendant had a prior trespassing offense. Defendant asked Officer Belen whether he was being detained, and Officer Belen responded in the affirmative. Defendant rolled up his window and sped out of the parking lot.

-1-

Police eventually arrested defendant and charged him with second-degree fleeing and eluding and resisting or obstructing a police officer. During trial, at the close of the prosecution's proofs, defendant moved for a directed verdict arguing that the prosecution relied on a private security policy to demonstrate the lawfulness of defendant's detainment, and could not provide a legal basis for the officers' investigation of defendant in the apartment complex parking lot. The trial court denied defendant's motion, stating that while the officers were not familiar with the intricate details of the apartment complex policy, it did not negate their obligation to investigate potential trespassing or loitering offenses within the area. Because the prosecution presented sufficient evidence to establish the elements of the charges such that a rational trier of fact could find defendant committed the offenses, the trial court permitted the matter to go to the jury. After approximately one hour of deliberation, the jury returned guilty verdicts on both counts.

Defendant later moved for a new trial on the ground that insufficient evidence supported a conviction of both offenses because the officers could not have been acting in the "lawful performance" of their duties, as required under MCL 257.602a, or issue any "lawful commands," as mandated under MCL 750.81d, when the officers lacked reasonable suspicion to detain defendant for trespassing. The prosecution responded that the evidence sufficed for the officers to briefly detain defendant to determine if he was one of the individuals listed on the I/LEADS system; which would subject him to arrest for the crime of trespassing. The trial court denied defendant's motion for a new trial concluding that, because (1) defendant was parked in an area known to law enforcement for its criminal activity, (2) the officers were frequently contacted to address issues caused by nonresidents at the apartment complex, and (3) the I/LEADS system provided information concerning who was subject to arrest for trespassing offenses, sufficient evidence demonstrated that the officers had reasonable suspicion to lawfully detain defendant.

## II. ANALYSIS

Defendant argues that the trial court abused its discretion by denying his motion for a new trial on the ground that the prosecution presented insufficient evidence for both convictions. Defendant asserts that the officers lacked reasonable suspicion to detain defendant for trespassing, and therefore, could not be acting in the "lawful performance" of their duties and could not issue a "lawful command," because the underlying seizure was unconstitutional. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). To determine if the prosecution presented sufficient evidence at trial to support a conviction, we "review[ ] the evidence in a light most favorable to the prosecutor to determine whether any tier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks and citation omitted). The prosecution is not obligated to present direct evidence of the defendant's guilt; rather, "[c]ircumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). All conflicting evidence, and any reasonable inferences that may be drawn from the evidence, must be resolved in favor of the prosecution. *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012).

-2-

We review "for an abuse of discretion a trial court's decision on a motion for a new trial." *People v Rogers*, 335 Mich App 172, 191; 966 NW2d 181 (2020). "A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable outcomes." *Id*.

The fleeing and eluding statute, MCL 257.602a, in relevant part provides:

(1) A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the *lawful performance* of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle is identified as an official police or department of natural resources vehicle.

\* \* \*

(4) Except as provided in subsection (5), an individual who violates subsection (1) is guilty of second-degree fleeing and eluding, a felony punishable by imprisonment for not more than 10 years or a fine of not more than $5,000.00, or both, if 1 or more of the following circumstances apply:

(a) The violation results in serious injury to an individual.

(b) The individual has 1 or more prior convictions for first-, second-, or third-degree fleeing and eluding, attempted first-, second-, or third-degree fleeing and eluding, or fleeing and eluding under a current or former law of this state prohibiting substantially similar conduct.

(c) The individual has any combination of 2 or more prior convictions for fourth-degree fleeing and eluding, attempted fourth-degree fleeing and eluding, or fleeing and eluding under a current or former law of this state prohibiting substantially similar conduct.

The prosecution must demonstrate that the officer acted in the lawful performance of his or her duties when defendant fled. *People v Chapo*, 283 Mich App 360, 366; 770 NW2d 68 (2009).

The resisting or obstructing a police officer statute, MCL 750.81d, provides in relevant part:

(1) Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

\* \* \*

-3-

(5) This section does not prohibit an individual from being charged with, convicted of, or punished for any other violation of law that is committed by that individual while violating this section.

\* \* \*

(7) As used in this section:

(a) "Obstruct" includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command.

(b) "Person" means any of the following:

(*i*) A police officer of this state or of a political subdivision of this state including, but not limited to, a motor carrier officer or capitol security officer of the department of state police.

In *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010) (citations omitted), this Court explained the elements of resisting or obstructing a police officer:

[T]he elements required to establish criminal liability are: (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties.

The prosecution must establish that the officers' conduct was lawful as an element of a resisting or obstructing arrest charge. *People v Moreno*, 491 Mich 38, 52; 814 NW2d 624 (2012). The lawfulness of an arrest is primarily a question of law to be decided by the trial court, however, if the lawfulness of the arrest is an element of a criminal offense, it becomes a question of fact for the jury. *People v Jones*, 301 Mich App 566, 598; 837 NW2d 7 (2013), citing *People v Dalton*, 155 Mich App 591, 598; 400 NW2d 689 (1986).

In *People v Jenkins*, 472 Mich 26, 32-33; 691 NW2d 759 (2005), our Supreme Court explained:

Under certain circumstances, a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even though there is no probable cause to support an arrest. A brief detention does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot. Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances. A determination regarding whether a reasonable suspicion exists must be based on commonsense judgments and inferences about human behavior.

Of course, not every encounter between a police officer and a citizen requires this level of constitutional justification. A "seizure" within the meaning of

-4-

the Fourth Amendment occurs only if, in view of all the circumstances, a reasonable person would have believed that he was not free to leave. When an officer approaches a person and seeks voluntary cooperation through noncoercive questioning, there is no restraint on that person's liberty, and the person is not seized. [Quotation marks and citations omitted.]

Defendant only disputes the sufficiency of the evidence concerning the "lawful performance" element of the fleeing and eluding conviction, and the "lawful command" element of the assaulting, resisting, obstructing a police officer conviction. Because the interaction between defendant and the officers is best defined as an investigative stop, the determination of the overall "lawfulness" of the officers' actions, under MCL 257.602a(4) and MCL 750.81d(1), depends on whether they had reasonable suspicion to believe defendant was trespassing in the apartment complex parking lot.

## A. REASONABLE SUSPICION

The United States and Michigan Constitutions both guarantee a right to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *Herring v United States*, 555 US 135, 136; 129 S Ct 695; 172 L Ed 2d 496 (2009); *People v Slaughter*, 489 Mich 302, 310-311; 803 NW2d 171 (2011). A seizure occurs "when, in view of all the circumstances, a reasonable person would conclude that he or she was not free to leave." *People v Kavanaugh*, 320 Mich App 293, 300; 907 NW2d 845 (2017). The lawfulness of a search or seizure is grounded in its reasonableness; whether it is reasonable depends on the totality of the circumstances. *People v Collins*, 298 Mich App 458, 467; 828 NW2d 392 (2012). Reasonable suspicion is a particularized suspicion, based upon some objective manifestation, that a person has committed, is committing, or is about to engage in some type of criminal activity. *United States v Arvizu*, 534 US 266, 273; 122 S Ct 744; 151 L Ed 2d 740 (2002); *People v Champion*, 452 Mich 92, 98-99; 549 NW2d 849 (1996). In *People v Oliver*, 464 Mich 184, 192; 627 NW2d 297 (2001), our Supreme Court summarized the requirements for making a valid investigatory stop based on reasonable suspicion as follows:

The brief detention of a person following an investigatory stop is considered a reasonable seizure if the officer has a "reasonably articulable suspicion" that the person is engaging in criminal activity. The reasonableness of an officer's suspicion is determined case by case on the basis of the totality of all the facts and circumstances. "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."

Although this Court has indicated that fewer facts are needed to establish reasonable suspicion when a person is in a moving vehicle than in a house, some minimum threshold of reasonable suspicion must be established to justify an investigatory stop whether a person is in a vehicle or on the street. [Quoting *People v LoCicero (After*

*Remand)*, 453 Mich 496, 501-502; 556 NW2d 498 (1996); alterations in *Oliver*).]

Further, in determining whether the totality of the circumstances provide reasonable suspicion to support an investigatory stop, those circumstances must be viewed "as understood and interpreted by law enforcement officers, not legal scholars . . . ." *People v Nelson*, 443 Mich 626, 632; 505 NW2d 266 (1993). Also, "[c]ommon sense and everyday life experiences predominate over uncompromising standards." *Id*. at 635-636.

Officers do not "violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." *Illinois v Lidster*, 540 US 419, 425; 124 S Ct 885; 157 L Ed 2d 843 (2004) (quotation marks and citation omitted; alteration in original). Neither reasonable suspicion nor probable cause is required for a police officer to approach a person, ask noncoercive questions, or request identification. *Jenkins*, 472 Mich at 33. To seize a person for "an investigatory stop," officers need only "a reasonably articulable suspicion that criminal activity is afoot," not the higher threshold of "probable cause to support an arrest." *Id*. at 32 (stating the requirements under *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), and its progeny). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry*, 392 US at 20 n 16.

In *People v McKinley*, 255 Mich App 20, 26-31; 661 NW2d 599 (2003), this Court explained that the lawfulness of the officers' commands, for a resisting arrest conviction, centered on whether a reasonable suspicion existed to justify the defendant's traffic stop. In *McKinley*, officers were dispatched to the home of the defendant's mother for investigation purposes after an officer observed the defendant's car on the highway, ran his license plate through the LEIN system, and realized there was an outstanding warrant for the defendant's arrest. *McKinley*, 255 Mich App at 22-23. As the deputy drove to the residence, he observed a car matching the dispatcher's description approach him, and believing the defendant the driver, initiated a traffic stop. *Id*. at 23. The deputy informed the defendant of the outstanding warrant for his arrest and requested his driver's license. The defendant refused to identify himself, stated he was going to leave, and fled in his car. *Id*. at 23-24. In reviewing the trial court's denial of the bindover on the resisting arrest charge, this Court concluded that reasonable suspicion existed to justify the traffic stop. *Id*. at 26. This Court held that, although the deputy did not know the defendant, he knew of the felony warrant for the defendant's arrest, observed a car matching the provided description on the street of the residence of the defendant's mother, and noticed that the driver matched the description of the defendant from the warrant. *Id*. at 26-27. Therefore, the deputy had a reasonable suspicion to investigate whether the person he observed driving the car was the defendant and initiate a lawful stop. Accordingly, the trial court abused its discretion in ruling that the prosecution presented insufficient evidence to bind over the defendant. *Id*. at 27-28, 31.

Traditionally, Michigan courts have approved of LEIN checks run in the course of lawful vehicle stops when the officers had a reasonable suspicion, and executed LEIN inquiries in furtherance of their initial seizure. See *Jenkins*, 472 Mich at 34-35 (stating that the officer was permitted to stop the defendant and complete the LEIN inquiry because he had reasonable

suspicion that the defendant was engaged in criminal activity); see also *People v Davis*, 250 Mich App 357, 367-368; 649 NW2d 94 (2002) (the officer had a valid reason to extend the stop and conduct the LEIN inquiry while the defendant was lawfully seized during a routine traffic stop).

Defendant argues that the prosecution failed to present sufficient evidence establishing the lawful performance of the officers' duties and the delivery of a lawful command because the officers did not have reasonable suspicion to detain defendant for a potential trespassing offense, rendering the underlying stop unconstitutional. Defendant contends that the apartment complex's trespass policy, regardless of how intertwined it was with police procedure, could not create reasonable suspicion and eclipse established constitutional protections from unreasonable searches and seizures. We disagree, considering the totality of the circumstances.

In this case, the officers testified at trial that they were in their police uniforms and on direct patrol of the apartment complex in their respective fully marked patrol vehicles with orders to make their presence known to deter criminal conduct and address any crimes afoot. The officers also engaged in community relations. Officer Deleeuw testified that the apartment complex had a history of persons committing various crimes often by nonresidents. The officers were tasked with investigating persons who potentially were not tenants who were loitering or trespassing. The officers used the police I/LEADS system to check persons they encountered on the apartment complex premises to determine if they previously had trespassed within the last year, and if so, in conjunction with the apartment complex's staff and third-party security personnel, the police would issue a citation. The police were authorized to tell nonresidents to leave and stay off the property to eliminate loitering and trespassing.

The officers testified that they came in contact with defendant occupying a parked car in the apartment complex parking lot where criminal activities had previously occurred. Officer Deleeuw testified that a week before the police had a similar situation in the same section of the parking lot where persons in a vehicle were dealing narcotics and possessed a loaded firearm. Officer Belen arrived just after Officer Deleeuw. Officer Deleeuw testified that he parked his patrol vehicle without blocking defendant's car, walked up to defendant, and asked him to identify himself. Defendant refused but said that he stayed with his girlfriend who resided at the complex. Officer Deleeuw testified that, had defendant decided at the outset of the contact to roll up his window and drive away he would have been free to do so. But defendant responded to the question about his residency which opened the investigation into defendant's status and whether he trespassed previously, and until verified he was not free to go. Officer Deleeuw told defendant that he had to be with a resident. Officer Deleeuw testified that he then went to his patrol vehicle to check defendant's status through LEIN and the I/LEADS system. Meanwhile, Officer Belen stood at defendant's passenger side window. Defendant retrieved his keys, rolled up the window by Officer Belen who informed him that he was not free to leave, and fled the area at a high rate of speed.

We conclude that the totality of the circumstances justified the officers' brief detention of defendant because of a reasonable suspicion that defendant was trespassing. The record establishes that the prosecution presented sufficient evidence that the officers acted in the lawful performance of their duties, per MCL 257.602a(4), and issue a lawful command to defendant pursuant to MCL 750.81d(1). Further, the prosecution presented sufficient evidence to establish beyond a reasonable doubt the elements of the crimes of which defendant was charged.

## B. DENIAL OF MOTION FOR NEW TRIAL

Defendant argues that the trial court abused its discretion in denying defendant's motion for a new trial because there was insufficient evidence for both convictions. As explained herein, the prosecution presented sufficient evidence in support of defendant's convictions. The trial court correctly determined that the evidence of the totality of circumstances established that the officers had reasonable suspicion to lawfully detain defendant and that he failed to obey a lawful command and fled the scene. The trial court, therefore, did not abuse its discretion by denying defendant a new trial.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra
/s/ James Robert Redford