*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EDDIE LEE HARRIS,

        Defendant-Appellant.

UNPUBLISHED
December 14, 2023

No. 362561
Jackson Circuit Court
LC No. 20-002869-FH

Before: REDFORD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Defendant, Eddie Lee Harris, appeals of right his conviction by jury verdict for possession of methamphetamine with intent to deliver, MCL 333.7401(2)(b)(*i*). On appeal, defendant argues that the police violated his rights by seizing him without reasonable suspicion. He further contends that the trial court erred by admitting bullets and a firearm into evidence at trial. Finally, he asserts that his rights under *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 76 L Ed 2d 644 (1966), were violated when the police used his statements to access contents of his cellular phone. We affirm.

## I. FACTUAL BACKGROUND

In June 2020, defendant and his pregnant girlfriend, Briana Reese, were staying at the home of Maury Sigers at 1029 Adrian Street in Jackson, Michigan. The couple had been staying in an upstairs room for several weeks, but that arrangement was no longer working, so they packed their belongings in Reese's silver Lincoln Zephyr and drove away on June 25, 2020. Less than an hour after they left, the Jackson Narcotics Enforcement Team (JNET) arrived at the house to execute a search warrant, which authorized a search for "all illegal controlled substances including but not limited to methamphetamine[,]" firearms, and money based on surveillance and a controlled buy of methamphetamine at the house. The warrant referred to Sigers, but it did not mention defendant or Reese.

During the warrant-based search, police officers found a box of hollow-point bullets in the upstairs bedroom where defendant and Reese had stayed. In addition, on a television stand in the downstairs living room, police officers saw a VHS player with a loose screw and a screwdriver on a nearby table. Officers then used the screwdriver to open the VHS player. Inside the VHS player,

-1-

officers found two bags of methamphetamine. Sigers explained that he had no connection to the methamphetamine, but Sigers said that defendant had put the methamphetamine in the VHS player. Sigers also told the police that defendant usually had a gun. Detective Samuel Sukovich, who was overseeing the search, "knew that [defendant] had several warrants for his arrest," so Sukovich put out a notice to officers in the area to search for a silver Lincoln Zephyr occupied by defendant and his girlfriend.

In response to that notice, Michigan State Trooper Tiler Bacon stopped the Lincoln Zephyr in a Walmart parking lot after consulting with Detective Sukovich. Reese was driving the vehicle at the time it was stopped, and defendant was in the passenger's seat. Both of them were detained and the vehicle was searched. The search of the vehicle did not turn up any evidence of narcotics, but a gun and hollow-point bullets were found in the trunk. The gun was registered to Reese and the bullets matched the ones found in the upstairs bedroom at 1029 Adrian Street. Also, defendant admitted that there may be active warrants for his arrest.

Shortly thereafter, Detective Sukovich arrived at the Walmart parking lot. Defendant was handcuffed and placed in the passenger's seat of Detective Sukovich's car, where he was read his *Miranda* rights. Detective Sukovich then questioned defendant about the methamphetamine found at 1029 Adrian Street and his connection to it. Detective Sukovich asked defendant if evidence of drug-trafficking would be found on defendant's phone. Defendant asked the detective: "Can I get my lawyer in this?" He received no response. Instead, Detective Sukovich told him that the police would be able to get access to his phone either way, but it would be faster if defendant would give the police his pass code. Also, Detective Sukovich assured defendant that if he provided the code to his phone, he would get to go home that day. Defendant gave the code to the detective, and he was allowed to get out of the detective's car. Detective Sukovich ultimately used a programing system called Cellebrite to download information from the phone as a pdf file for easier recognition and use.

Before trial, defendant challenged the police stop and the recovery of data from this phone. The trial court conducted evidentiary hearings on April 19, 2022, and May 20, 2022. During those hearings, the trial court ruled from the bench that the stop was valid and defendant's statements to the police and the resulting information retrieved from his phone need not be suppressed. After a two-day trial on May 23 and 24, 2022, defendant was convicted of possessing methamphetamine with intent to deliver. The trial court thereafter sentenced him to serve 2 to 20 years in prison. In the wake of his sentencing hearing, defendant unsuccessfully moved for a new trial, and defendant then filed this appeal of his conviction, but not the sentence that he received.

## II. LEGAL ANALYSIS

On appeal, defendant presents three issues. First, he asserts that he was improperly seized without reasonable suspicion or probable cause when he and his girlfriend were stopped and then detained in the Walmart parking lot. Second, he contends that the trial court abused its discretion by admitting at trial the bullets found in the room where he and his girlfriend stayed as well as the gun and the bullets found in the trunk of the Lincoln Zephyr. Third, he insists that the trial court erred in allowing the introduction at trial of information obtained from his phone after he invoked his right to counsel under *Miranda*. We shall address each of these arguments in turn.

## A. TRAFFIC STOP AND DETENTION

Defendant faults the police for stopping and then detaining him in the Walmart parking lot without reasonable suspicion or probable cause. Defendant moved prior to trial for suppression of the evidence resulting from the stop and detention, but the trial court determined that the stop and detention were constitutionally permissible. "We review for clear error a trial court's findings of fact in a suppression hearing, but we review de novo its ultimate decision on a motion to suppress." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). "We review de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *Id*.

Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. "A traffic stop amounts to a seizure under the Fourth Amendment, and it is justified if the officer has an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *People v Campbell*, 329 Mich App 185, 196; 942 NW2d 51 (2019). Similarly, "[a] brief, on-the-scene detention of an individual is not a violation of the Fourth Amendment as long as the officer can articulate a reasonable suspicion for the detention." *People v Custer*, 465 Mich 319, 327; 630 NW2d 870 (2001). "Whether a reasonable suspicion justifies a traffic stop [or a brief detention] depends on a commonsense view of the totality of the circumstances." *Campbell*, 329 Mich App at 196. Here, we conclude that the trial court correctly ruled that the initial traffic stop and the subsequent detention of defendant were readily supported by reasonable suspicion.

At the time of the traffic stop and the detention, defendant had several outstanding warrants for his arrest. A police officer may conduct a traffic stop when a person suspected of having an arrest warrant is observed in a vehicle. *People v McKinley*, 255 Mich App 20, 27; 661 NW2d 599 (2003). The existence of the outstanding warrants, standing alone, justified the traffic stop and the detention of defendant in this case. Indeed, "discovery of an outstanding arrest warrant can [even] dissipate or attenuate the taint of an initial illegal stop or arrest." *People v Reese*, 281 Mich App 290, 303; 761 NW2d 405 (2008). Here, the trooper who performed the traffic stop not only had a sound basis to stop the Lincoln Zephyr because of defendant's outstanding warrants, but also had reasonable suspicion to perform the traffic stop based on the seizure of methamphetamine coupled with Sigers's statements linking defendant to that methamphetamine. And after making the traffic stop, the trooper had a perfectly sound basis for detaining defendant based on the outstanding arrest warrants. In sum, the trial court correctly ruled that the traffic stop and the detention of defendant were constitutionally permissible.

## B. ADMISSION OF BULLETS AND FIREARM

Defendant next challenges the trial court's decision to admit the bullets found in the room where defendant and his girlfriend stayed as well as the gun and the bullets seized from the trunk of the Lincoln Zephyr. Over an objection from the defense, the trial court ruled that that evidence was relevant to establish defendant's residence in the house in which the methamphetamine was

found. A trial court's decision to admit evidence is reviewed for an abuse of discretion.[1] *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010). Under MRE 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Generally, "relevant evidence is admissible," MRE 402, but relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" MRE 403.

Here, the trial court ruled that the bullets found in defendant's room and the gun and bullets found in the Lincoln Zephyr were relevant to prove where defendant had lived and his constructive possession of methamphetamine found in that house. A person may be found guilty of possessing a controlled substance without having actual possession. *People v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992). Indeed, constructive possession exists when the totality of circumstances reveals a sufficient nexus between the defendant and the contraband. *Id*. at 521. The bullets that the trial court admitted were special hollow-point rounds found in the room defendant had recently vacated and with the firearm in the Lincoln Zephyr. Thus, the hollow-point bullets and the firearm linked defendant to the house where the methamphetamine was seized.

Defendant put his connection to that house in issue during his opening statement in which his defense attorney pointed out that the "home at 1029 Adrian Street is owned by Maury Sigers," who "blames the drugs [found at the house] on Eddie Harris who is no longer living there." And "[w]hen Eddie Harris is interviewed by the police, he gives a different address. He doesn't even give the 1029 Adrian Street address as his home." Finally, defense counsel wrapped up his opening statement by asserting that "Eddie Harris took everything that was his when he left Maury Sigers's home." Introduction of the hollow-point bullets found in the room where defendant stayed as well as the firearm with matching hollow-point bullets found in the car refuted that assertion. In sum, the trial court acted within its discretion in overruling defense counsel's relevance-based objection to the admission at trial of the bullets and the firearm.

Defendant alternatively argues that his attorney was ineffective in failing to move in limine to exclude the hollow-point bullets and the firearm. To establish ineffective assistance, defendant must show that (1) his "counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). In this case, that claim of ineffective assistance of counsel is devoid of merit because defense counsel strenuously objected at trial on relevance grounds to the admission of the bullets and the firearm. When defense counsel objected to the admission of the bullets as irrelevant, the trial court asked the prosecutor: "What's the relevance?" The prosecutor responded: "Judge, they're going to match the bullets that are found in the vehicle that Mr. Harris is located in and so if he's going to say he wasn't living in that home he's left bullets there as well." Although defense counsel persisted with

---

[1] In his brief on appeal, defendant states: "Trial counsel failed to file a pre-trial motion to exclude any reference to the bullets or the gun. Therefore, this issue is unpreserved, and reviewed for plain error." But defense counsel made contemporaneous objections at trial to the admission of both the bullets and the gun, so the issue was properly preserved. Thus, contrary to defendant's erroneous assertion on appeal, defendant is entitled to much more than plain-error review of this issue.

his relevance objection, the trial court ruled: "Assuming that all this gets tied up . . . together then it's relevant so we'll extend the courtesy of laying the foundation."

Later in the trial, despite the trial court's ruling on defense counsel's relevance objection to the bullets, defense counsel objected on relevance grounds to the admission of the firearm found in the trunk of the Lincoln Zephyr. Defense counsel stated: "Objection, relevance, he's not charged with any gun." The trial court responded: "Didn't we do this before with the bullets, overruled." In light of defense counsel's contemporaneous objections on relevance grounds to the admission of the hollow-point bullets and the firearm, defendant has no basis whatsoever to claim that he was deprived of the effective assistance of counsel when his attorney failed to file a pretrial motion to exclude the hollow-point bullets and the firearm on the basis of relevancy.

## C. THE *MIRANDA* CLAIM

Finally, defendant faults the trial court for refusing to suppress the information obtained in the search of defendant's phone, but that argument reflects a fundamental misunderstanding of the *Miranda* doctrine. Defendant's argument rests on Detective Sukovich's request during custodial interrogation that defendant provide the code to unlock his phone. Defendant's statement revealed the code, but the prosecution did not introduce that statement at trial. Instead, the prosecution used the contents of the phone as evidence at trial. As defendant put it in seeking the suppression of the contents of the phone, "the entry into the cell phone as we indicated is fruit of the poisonous tree." But as the United States Supreme Court and this Court have explained, "the right against compelled self-incrimination 'cannot be violated by the introduction of nontestimonial evidence obtained as a result of voluntary statements.' " *Campbell*, 329 Mich App at 203-204, quoting *United States v Patane*, 542 US 630; 124 S Ct 2620; 159 L Ed 2d 667 (2004). A *Miranda* violation implicates the Fifth Amendment, which has no fruit-of-the-poisonous-tree remedy, not the Fourth Amendment, which has a fruit-of-the-poisonous-tree remedy, so "the exclusion of unwarned statements . . . is a complete and sufficient remedy for any perceived *Miranda* violation." *Campbell*, 329 Mich App at 204 (quotation marks and citation omitted). Therefore, "[t]here is simply no need to extend (and therefore no justification for extending) the prophylactic rule of *Miranda* to the physical fruit of a voluntary, albeit unwarned, statement." *Id.* (quotation marks, brackets, and citation omitted). In this case, the record contains neither a finding nor any evidence that defendant's disclosure of the code to his phone was involuntary, so the information in the phone was not subject to suppression even if a *Miranda* violation resulted in disclosure of the code. *Id*.

Affirmed.

/s/ James Robert Redford
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates

-5-